**Martha R. SCHOONOVER, Plaintiff,**

v.

**WEST AMERICAN INSURANCE COMPANY, Hollie Sharpe, Joe C. Ware d/b/a Ware and Wootton, Defendants.**

Civ. A. No. J87–0159(B).

United States District Court,
S.D. Mississippi,
Jackson Division.

June 2, 1987.

Suzanne N. Saunders, Jackson, Miss., for plaintiff.

Charles T. Ozier, David A. Barfield, Jackson, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

The Court has before it Martha R. Schoonover's Application to review the Order of the Magistrate denying her Motion to Remand. The Magistrate ruled that the case was timely removed and that the Mississippi Defendants were fraudulently joined. Schoonover challenges the Order on both issues. Agreeing with the Magistrate's view of the law, the Court affirms the Order of the Magistrate and refuses to remand the case to state court.

### I.

Schoonover brought this action in the Circuit Court of Madison County, Mississippi, on December 1, 1986, claiming damages from West American Insurance Company (West American) under a homeowner's insurance policy. West American admits that the damage to her house, caused by

fire, is covered by its policy. In addition to West American, a non-resident company, the original complaint named four resident defendants: Hollie Sharpe, Joe C. Ware, James C. Bynum and Bankston Contractors. Sharpe is the local claims agent for West American. Sharpe hired Ware, an independent adjuster, to adjust Schoonover's claim. Bankston Contractors and Bynum, who does business as Bynum Professional Cleaning Services, apparently worked on Schoonover's house in conjunction with the adjustment of her claim. Because of the joinder of Bynum and Bankston Contractors, West American did not attempt removal under the original complaint.

On February 18, 1987, Schoonover filed a motion for leave to amend the complaint, to which she attached a proposed amended complaint. The amended complaint named only West American, Sharpe and Ware as Defendants, dropping Bynum and Bankston Contractors. In the motion to amend, Schoonover stated that she had learned through discovery that Bynum and Bankston Contractors should be dismissed from the lawsuit.

On February 20, the circuit judge heard motions in the case. At that hearing Schoonover's counsel orally agreed to dismiss Bynum with prejudice. The circuit judge instructed counsel for Schoonover and Bynum to submit a written order of dismissal once the terms of dismissal had been agreed upon. Counsel subsequently disagreed about the terms of dismissal and did not submit an order. No record was made of the February 20 hearing. No order dismissing Bynum was ever entered. Schoonover, however, did file a voluntary dismissal of Bankston Contractors on February 20.

On February 26, the circuit judge entered an order granting leave to file the amended complaint and adopting the proposed amended complaint. Since the amended complaint did not name Bynum, the order had the apparent effect of dismissing Bynum from the case. Although signed on the 25th and filed on the 26th, the Order is worded as if the motion to amend were granted on the day of the February 20 hearing, and allows the Defendants thirty days from the date of that hearing to answer the amended complaint.

West American removed the case to federal court on March 26, less than thirty days after entry of the order amending the complaint.

On March 30, Schoonover filed a motion to remand. She argued that Bynum "has not been dismissed in this action and will not be dismissed in this action because an attempted settlement has failed...." On April 9, after Bynum had submitted a written objection to her position, Schoonover filed an expanded motion to remand in which she retracted the previous argument and asserted instead that Bynum had been dismissed with prejudice at the February 20 hearing. In an attached affidavit, the circuit judge, R.L. Goza, affirmed that he had dismissed Bynum orally at the hearing, that no record had been made, and that he would sign an order of dismissal as soon as one was presented to him. Schoonover argued that removal was untimely since it took place more than thirty days after the February 20 hearing.

II.

The parties agree that the period for removal is established by the second paragraph of 28 U.S.C. § 1446(b) (emphasis added):

> If the case stated by the initial pleading is not removable, a petition for removal may be filed within thirty days after *receipt by the defendant*, through service or otherwise, *of a copy of* an amended pleading, motion, order or other *paper from which it may first be ascertained that the case is one which is or has become removable.*

Holding that the petition for removal was timely, the Magistrate found that the time to petition for removal began to run no earlier than February 26, 1987, when the Order granting Schoonover's motion to amend the complaint was filed in the court record. "The record of the State Court is generally considered the sole source from which it may be ascertained whether a case

originally not removable has since become removable." *Miller v. Stauffer Chemical Company,* 527 F.Supp. 775, 777 (D.Kan. 1981) (citing 1A Moore's Federal Practice ¶ 0.168[3.–5], at 488–89, now found at ¶ 0.168[3.–5–6], at 598–99 (2d ed. 1983)).

■ On review, Schoonover argues that the time to petition for removal runs from the February 18 date of her motion to amend the complaint, arguing that the motion gave notice of her intent to dismiss Bynum and Bankston Contractors. The Court is of the opinion, however, that the motion did not show that the case had become removable, as required by the plain language of 28 U.S.C. § 1446(b), because the state court retained discretion to deny the leave to amend. *See Miller v. Stauffer Chemical Company,* 527 F.Supp. at 777. *See also Lesher v. Andreozzi,* 647 F.Supp. 920 (M.D.Pa.1986) (since settlement dismissing resident defendants required court approval to become legally effective under Pennsylvania law, time period for removal ran from date of approval by the court and not from the earlier date of execution by the parties).

■ Schoonover argues alternatively that the time to petition for removal runs from the date of the February 20 hearing, at which, she argues, Bynum was orally dismissed. The Court agrees with the Magistrate, however, that an unrecorded proceeding cannot start the running of the time for removal. *See Miller v. Stauffer Chemical Company,* 527 F.Supp. at 777. Section 1446(b) states that the time begins to run on "receipt by the defendant ... of a copy of ... paper...." The confusion which can be created by an unrecorded proceeding is amply demonstrated by the history of this case.

■ The time limitation in 28 U.S.C. § 1446(b) is not jurisdictional; it may be waived or barred by estoppel. *See, e.g., Staples v. Joseph Morton Company,* 444 F.Supp. 1312 (E.D.N.Y.1978). In the alternative, Schoonover is estopped from asserting against West American that Bynum was dismissed at the February 20 hearing because the record shows that as late as

March 30 she believed Bynum still to be a party.

## III.

Since the action was timely removed, the Court next considers whether the resident defendants, Sharpe and Ware, were fraudulently joined to the amended complaint to defeat removal.

> In order to establish that an in-state defendant has been fraudulently joined, the removing party must show ... that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court....

*B., Inc. v. Miller Brewing Company,* 663 F.2d 545, 549 (5th Cir.1981).

The Magistrate held that all of Schoonover's claims against Sharpe and Ware were insurance bad-faith claims based on their actions in adjusting the fire loss under the West American policy. The Magistrate concluded that since such claims depend legally on the contractual duty created by the insurance policy, the claims were barred under Mississippi law as established in *Griffin v. Ware,* 457 So.2d 936 (Miss.1984):

> ... adjusters employed by an insurer, who were not parties to the agreement for insurance, are not subject to an implied duty of good faith and fair dealing to the insured.

457 So.2d at 940.

The Court agrees with the Magistrate that all the claims against Sharpe and Ware are based on the alleged breach of the insurance contract. Even though Schoonover characterizes the claims in various ways, including trespass and conversion, the only damages Schoonover claims are those owed for breach of contract under the policy, including the $500,000 actual and $10,000,000 punitive damages, which are allegedly owed under the implied duty of good faith (her loss from the fire she alleges to be roughly $86,000). Schoonover admits in her deposition that her real grievance against Sharpe and Ware is how they adjusted her claim. She has not seriously

disputed the Magistrate's characterization of her claims against them.

Schoonover's principal argument is instead that the precedent established by *Griffin v. Ware*, 457 So.2d 936, was overruled by the Mississippi Supreme Court in *Leathers v. Aetna Casualty & Surety Company*, 500 So.2d 451 (Miss.1987). For the reasons explained below, however, the Court is of the opinion that *Griffin v. Ware* has not been overruled and is still law in Mississippi.

The facts of *Griffin v. Ware* were these. The Griffins claimed damages from Ware, an independent adjuster (also the Defendant in this case), because of his investigation of a claim they filed under a flood insurance policy issued by the National Flood Insurance Program. In 1982 the Griffins noticed that the foundation of their house had been settling, causing misalignment of the floors, doors and sills of the house. The Griffins alleged that the foundation had been damaged by an underground flow of water caused by the 15-inch rain and subsequent flood of April, 1979. During the flood, water had come within two inches of entering the house. The Flood Insurance Program hired Ware to investigate. Ware reported that the settling was caused by Yazoo Clay, a notoriously unstable local soil formation, rather than by the flood, and that the claim should be denied. The Griffins were able to have their claim reconsidered, however, on the report of another adjuster. After settling with the Flood Insurance Program, the Griffins sued Ware for having deliberately falsified his report.

The Mississippi Supreme Court interpreted the claim as a bad-faith action based on the insurance policy:

> The gravamen of the action against [Ware and his partner] was that they made false reports to their principal and thereby committed a tort.... Stated differently, [the Griffins] charge [Ware] with a tort because [Ware] breached an implied duty of good faith and fair dealing....

457 So.2d at 938. The Mississippi Supreme Court then concluded that Ware could not be held liable to the Griffins because he was not a party to the insurance contract.

Although the Mississippi Supreme Court has never applied the holding of *Griffin v. Ware* directly, the federal district courts of Mississippi have applied the holding in bad-faith actions against insurance companies to bar joinder of individual defendants who are agents or adjusters for the company. *Columbus v. United Pacific Insurance Company*, 641 F.Supp. 707 (S.D.Miss.1986) (Barbour, J.); *Williams v. Lafeyette Insurance Company*, 640 F.Supp. 686 (N.D. Miss.1986) (Senter, J.); *Columbus v. Reliance Insurance Company*, 626 F.Supp. 1147 (S.D.Miss.1986) (Lee, J.); *Hill v. Giuffrida*, 608 F.Supp. 648 (S.D.Miss.1985) (Russell, J.). *See also O'Malley v. United States Fidelity and Guaranty Company*, 602 F.Supp. 56, 59 (S.D.Miss.1985), *aff'd*, 776 F.2d 494 (5th Cir.1985). In two other cases, the district courts have reached the same result applying the general principles of agency law. *Gray v. United States Fidelity and Guaranty Company*, 646 F.Supp. 27 (S.D.Miss.1986) (Wingate, J.); *Patton v. Aetna Insurance Company*, 595 F.Supp. 533 (N.D.Miss.1984) (Biggers, J.).

Schoonover argues that the rule applied by this line of cases was overruled in *Leathers*, 500 So.2d 451. *Leathers* was a bad-faith action against a workers' compensation policy carrier and one of its employees, Johanna Rice. The case came to the Mississippi Supreme Court after the trial court dismissed it under the exclusivity provision of the workers' compensation statute. The Supreme Court reversed, noting that it had recently interpreted the statute to allow actions for intentional breach of the duty to pay workers' compensation benefits. 500 So.2d at 452.

On petition for rehearing the Court considered whether the dismissal of Johanna Rice should be reinstated under the law established by *Griffin v. Ware* on the ground that she was involved only as an employee or agent of Aetna and had no individual duty toward Leathers. The Court described *Griffin v. Ware* as

> an action ex-contractor decided in favor of an independent insurance adjusting

firm on grounds it had no duty, contractual or quasi-contractual, to the insured. 500 So.2d at 453. The Court continued, However, our general rule in tort is that the agent or servant, the one whose conduct has rendered his principal liable, has individual liability to the plaintiff. *Id.* The Court then declined to decide whether Rice could be held liable on the claims raised by *Leathers* on the ground that the question had not been raised below. It remanded the question to the trial court without prejudice:

> Our remand is without prejudice to the prerogatives of all parties to present and litigate these questions *ab initio.*

*Id.*

In *Leathers*, the Mississippi Supreme Court declines to decide whether Leathers states a claim against Johanna Rice; it does not overrule *Griffin v. Ware.* The general rule in tort to which the Court refers is not inconsistent with the holding of *Griffin v. Ware.* An individual generally may be held liable jointly with a corporation for a tort he commits as an agent of the corporation. *See, e.g., Mississippi Printing Company v. Maris, West & Baker, Inc.,* 492 So.2d 977 (Miss.1986) (individuals participated directly in the publication of a libelous letter). *Griffin v. Ware* establishes only that the "tort" of breach of "an implied duty of good faith and fair dealing," being a hybrid of contract, is not a tort in the general sense. 457 So.2d at 938.

 Although styled a tort, an action for bad-faith breach of contract is created by contract and requires proof of a breach of contract. *See, e.g., Aitken v. State Farm Mutual Automobile Insurance Company,* 404 So.2d 1040, 1045 (Miss.1981) (no punitive damages as a matter of law if insurer prevails on contract claim.) The damages allowed against insurance companies are designed to punish the corporation for breaching the corporate duty created by the insurance contract. The damages are calculated therefore against the net worth of the corporation. *See Bankers Life and Casualty Company v. Crenshaw,* 483 So.2d 254, 278 (Miss.1985), *prob. juris.*

*noted,* —— U.S. ——, 107 S.Ct. 1367, 94 L.Ed.2d 683 (1987).

Schoonover claims $10,000,000 in punitive damages jointly and severally from West American, Sharpe and Ware. Claiming from the individual agents damages calculated against the assets of the corporation is unjustifiable under the punitive damages theory; it is very nearly abusive. Ordinarily an agent cannot be held liable even for the simple contractual damages owed by his acknowledged principal. *See, e.g., Gardner v. Jones,* 464 So.2d 1144, 1151 (Miss.1985) (citing *Griffin v. Ware* for this principle). Ordinarily, also, an individual does not become liable for corporate obligations unless the corporation has been used for fraud and cannot meet its obligations. *See, e.g., TCL, Inc. v. Lacoste,* 431 So.2d 918, 922 (Miss.1983). Schoonover has alleged neither that Sharpe or Ware acted outside his authority as an agent for West American, nor that West American is unable to meet its obligations under the contract. The claims against Sharpe and Ware are therefore justifiably barred.

IT IS THEREFORE ORDERED that the Order of the Magistrate denying the motion to remand be affirmed.