560 So.2d 129 (1989)
BOBBY KITCHENS, INC.
v.
MISSISSIPPI INSURANCE GUARANTY ASSOCIATION.
No. 07-58619.
Supreme Court of Mississippi.
October 4, 1989.
Rehearing Denied April 25, 1990.
Cotton Ruthven, Waller & Waller, Jackson, for appellant.
Charles G. Copeland, J. Tucker Mitchell, Susan H. Rushing, Copeland Cook Taylor & Bush, Jackson, for appellee.
Before HAWKINS, P.J., and SULLIVAN and PITTMAN, JJ.
PITTMAN, Justice, for the Court:
On August 8, 1984, James W. Mulloy was killed as a result of an accident involving a vehicle owned by Bobby Kitchens, Inc. Mulloy had stopped his vehicle on Interstate 55 north of Jackson in Madison County to inspect a boat that he was pulling. A vehicle owned by Bobby Kitchens, Inc., and being operated by Kitchens, Inc., *130 employee Michael Mason struck and killed Mulloy. Thereafter the estate of Mulloy filed a wrongful death action against Kitchens, Inc., Michael Mason and John Mason, part-owner and manager of Kitchens, Inc., and father of Michael Mason, in the Circuit Court of Madison County. On April 11, 1985, the jury returned a verdict in favor of the estate of James Mulloy for $1,015,696.32.
The ensuing action between Kitchens, Inc. and Mississippi Insurance Guaranty Association resulted from the following circumstances. Kitchens, Inc. was insured by Commercial Union Insurance which, after suit was filed, offered to pay $500,000.00, its policy limits, in an effort to settle the case with the Mulloy estate. Mulloy's estate, through its attorney, Carey Varnado, refused the $500,000.00 settlement offer from Commercial Union Insurance and continued progress toward the trial of the case. Upon realizing that Commercial Union's $500,000.00 policy limits would not be sufficient to settle the claim of the Mulloy estate, Bill Waller, attorney for Bobby Kitchens, Inc., began to look for additional insurance to protect his corporate client. Kitchens, Inc. discovered that it was also insured by Excalibur Insurance, a Texas insurance company, and further learned that Excalibur had been declared insolvent as of September 5, 1984.
On January 23, 1985, Attorney Waller notified the Mississippi Insurance Guaranty Association (hereinafter "MIGA") of the claim against Kitchens, Inc., of Excalibur's insolvency, and requested that MIGA defend and/or settle with the Mulloy estate as directed under Miss. Code Ann. §§ 83-23-101 to -137 (1972 & Supp. 1988). After a plethora of letters and conversations and conferences, Carey Varnado offered to settle the estate's claim for $810,000.00, which would have included $500,000.00 to be paid by Commercial Insurance on behalf of their insured Kitchens, Inc., $300,000.00 to be paid by MIGA, the $300,000.00 being MIGA's statutory limit of liability as set out in Miss. Code Ann. § 83-23-115(1)(a), and $10,000 to be paid by State Farm Insurance, resulting from coverage on Michael Mason's personal automobile. Waller urged MIGA to pay the $300,000, which would have allowed the Mulloy claim to be settled, and in the alternative he requested that MIGA assume the defense of Kitchens, Inc. The MIGA Claims Committee, consisting of professional insurance claims persons, reviewed the Commercial Union file, consisting of pleadings, accident reports, and depositions, and concluded that MIGA should not pay $300,000.00 on behalf of Kitchens, Inc., the committee agreeing that the claim for wrongful death brought by Mulloy's estate should have a dollar value of less than Commercial Union's offer of $500,000.00. MIGA refused to participate in the settlement of the $810,000.00 demand. The claim of the estate of Mulloy was tried on April 10 and 11, 1985, in Madison County, and there was a jury verdict against Kitchens, Inc., in the amount of $1,015,696.32.
Thereafter, Attorney Waller demanded that MIGA pay and satisfy the full judgment and called MIGA's attention to the serious financial jeopardy in which Kitchens, Inc., had been placed because of the judgment. Further, he called on MIGA to appeal the case from the Madison County Circuit Court if the judgment was not to be satisfied. The jury verdict of $1,015,696.32 was not appealed. Commercial Union Insurance paid their $500,000.00 policy limits, but did not appeal the jury verdict. MIGA paid in $300,000.00, but only after the Mulloy estate filed a writ of garnishment against MIGA on August 21, 1985. Thereafter, Kitchens, Inc., effected a payment plan so that Kitchens, Inc., could satisfy the judgment over and above the $810,000.00 paid by the insurance companies.
On April 19, 1985, Kitchens, Inc., filed suit against MIGA, alleging tortious breach of contract and breach of fiduciary duty and asking for actual and punitive damages. Thereafter, Kitchens, Inc., moved to amend its complaint against MIGA in order to allege additional causes of action in tort and to add certain members of MIGA's Board of Directors and MIGA's Executive Director as parties to the suit. The trial court allowed amendment of the complaint, but denied the request to add individual *131 employees of MIGA as defendants. The Amended Complaint added allegations of breach of statutory duty to assume the obligations of an insolvent insurance company and the breach of statutory duty of good faith against MIGA, further alleging misrepresentation, deceit, gross negligence, failure to admit coverage and pay the claim and intentional infliction of mental distress.
On November 13, 1986, MIGA moved for summary judgment on all claims, or partial summary judgment on the issue of punitive damages. On December 30, 1986, Kitchens, Inc., moved for summary judgment on the issues of bad faith breach of contract, breach of statutory duties, and on the issues of MIGA's immunity from bad faith, liability for damages beyond its statutory limit, and punitive damages. The trial court, recognizing this matter as a case of first impression, granted summary judgment against MIGA as to the $300,000 coverage, denied summary judgment on the issue of whether MIGA had any other liability, denied Kitchens Inc.'s motion to find MIGA liable for bad faith, denied MIGA's motion that it could not be liable in any case beyond $300,000, and granted MIGA's motion that it could not be liable for punitive damages.
The case sub judice was tried on February 24-26, 1987. There was substantial testimony as to how MIGA had arrived at its decision in regard to its refusal to join in the potential settlement immediately prior to trial. Attorney Waller testified in detail as to his dealings with Excalibur and MIGA, and his efforts in attempting to find additional insurance. Waller further offered his testimony and letters to MIGA requesting and then demanding that MIGA defend Kitchens, Inc., or pay the $300,000 into the settlement effort. Cary Bufkin, the attorney for Commercial Union, testified as to his strategy in defending the Mulloy claim and his recommendation to Commercial Union that the Mulloy claim was worth the $500,000 policy limits, and further testified that Attorney Waller would have been welcome to participate in the defense of the Mulloy claim. Carey Varnado, the attorney for the estate of Mulloy, testified that it was his opinion prior to trial that there was potential for a big verdict. The jury found in favor of MIGA. Kitchens, Inc., moved for a new trial and a judgment notwithstanding the verdict. Both motions were denied by the trial court. Kitchens, Inc., has appealed to this Court.
MIGA is an involuntary unincorporated association of insurers created by Miss. Code Ann. § 83-23-101 to -137 (1972 & Supp. 1988). Funds to support MIGA are collected by assessment of solvent insurance companies, and all insurance companies doing business in Mississippi are required to belong to the Association. MIGA is statutorily prohibited from paying anything other than covered claims, and the statutes further require that all other sources of insurance must be exhausted before MIGA can be called upon to make any payment.

I. THE VERDICT OF THE JURY IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
This Court will not set aside a jury verdict unless it is against the overwhelming weight of the evidence and credible testimony. Adams v. Green, 474 So.2d 577, 581 (Miss. 1985). The jury is the judge of the weight of the evidence and the credibility of the witnesses. Jackson v. Griffin, 390 So.2d 287, 289 (Miss. 1980). Because of the jury verdict in favor of the appellee, this Court resolves all conflicts in the evidence in his favor. This Court also draws in the appellee's favor all reasonable inferences which flow from the testimony given. City of Jackson v. Locklar, 431 So.2d 475, 477 (Miss. 1983). This court must assume that the jury drew every permissible inference from the evidence offered in favor of the appellee. Burnham v. Tabb, 508 So.2d 1072, 1077 (Miss. 1987).
MIGA put on substantial evidence to the effect that its agents at all times acted in good faith and in compliance with their statutory duties. Witnesses called by Kitchens, Inc., attempted to contradict this notion. MIGA was also able to point to other sources of possible fault concerning Kitchens, Inc.'s plight, such as the handling *132 of the Mulloy trial and possible errors by attorneys for Kitchens, Inc. (late notice to MIGA, failure to participate personally in the Mulloy trial, filing suit against MIGA immediately after the Mulloy trial and before the garnishment proceeding had had a chance to run its course). MIGA was also able to show that Carey Varnado stood to gain financially for his testimony, and that the $205,000 that Kitchens, Inc., had claimed to owe had been reduced by agreement with the Mulloy estate. It also appears that the largely undefined role (at least by case law) and nature of MIGA helped the Appellee in this case. Considering the appropriate standard of review, this Court finds that this jury verdict is not against the overwhelming weight of the evidence.

II. THE TRIAL COURT ERRED IN FAILING TO GRANT A NEW TRIAL.
A new trial may be granted pursuant to Miss.R.Civ.P. 59. A new trial may be granted in a number of circumstances, such as when the verdict is against the overwhelming weight of the evidence, or when the jury has been confused by faulty jury instructions, or when the jury has departed from its oath and its verdict is a result of bias, passion, and prejudice. Griffin v. Fletcher, 362 So.2d 594, 596 (Miss. 1978); Clayton v. Thompson, 475 So.2d 439, 443 (Miss. 1985). This Court will reverse a trial judge's denial of a request for new trial only when such denial amounts to a abuse of that judge's discretion. Maxwell v. Illinois Central Gulf R.R., 513 So.2d 901, 908 (Miss. 1987). "The existence of trial court discretion, as a matter of law and logic, necessarily implies that there are at least two differing actions, neither of which if taken by the trial judge will result in reversal." Bailey v. Georgia Cotton Goods Co., 543 So.2d 180, 182 (Miss. 1989).
It has been suggested at least once that "against the overwhelming weight of the evidence" and "against the substantial weight of the evidence" are standards without any real meaning, and that a consideration of six specific factors would be a better test of whether a new trial should be granted. See Jesco, Inc. v. Whitehead, 451 So.2d 706, 715-716 (Miss. 1984) (Robertson, J., specially concurring). These six factors are discussed by both parties in their briefs. These factors are: (1) Has the search for the true facts proceeded as far as it reasonably may under the peculiar facts and circumstances of the case? (2) To what extent would it be unfair to the party in whose favor the verdict was returned in effect to give that party's adversary a second bite at the apple? (3) Considering the evidence, is there a substantial basis for believing that the jury disregarded their oaths and failed to follow the instructions of the Court in reaching its verdict? (4) Assuming arguendo that the verdict is unjust (by reference to the underlying facts of the transaction or occurrence, the complete truth of which we will never know), what is the impact of that "injustice" upon the party against whom the verdict has been returned? (5) If a new trial is ordered, will the party in whose favor the verdict has been returned be deprived of some fair advantage he enjoyed in the first trial? and (6) Are there any other factors present, peculiar to the particular case of the parties, that would render just or unjust the grant or denial of a new trial? Under any of the above-mentioned standards, the trial judge's denial of the new trial motion was not an abuse of discretion, and this assignment of error is without merit.

III. THE TRIAL COURT SHOULD HAVE GRANTED KITCHENS' MOTION FOR UMMARY JUDGMENT ON THE EXCESS JUDGMENT OR ITS PRE-EMPTORY INSTRUCTION.
This Court assumes that the peremptory instruction to which this assignment refers is the one denied by the trial court after the close of Kitchens Inc.'s case in chief. The trial court should not have granted a directed verdict in favor of the plaintiff when all it had before it is the plaintiff's case in chief. The peremptory instruction was correctly denied regardless of the nature of the evidence.
The appellant next argues for summary judgment. Summary judgments may be *133 granted pursuant to Miss.R.Civ.P. 56. The applicable standard of review of a grant or denial of a motion for summary judgment is as follows:
The trial court must review carefully all of the evidentiary matters before it  admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If in this view the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise the motion should be denied.
Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says just the opposite. Issues of fact, as a matter of proper construction of Rule 56, also exist where there is more than one reasonable interpretation that may be given undisputed testimony, where materially differing but nevertheless reasonable inferences may be drawn from the uncontradicted facts, or where the purported establishment of the facts has been sufficiently incomplete or inadequate that the trial judge cannot say with reasonable confidence that the full facts of the matter have been disclosed.
Dennis v. Searle, 457 So.2d 941, 944 (Miss. 1984) (citations omitted).
In an ordinary bad faith case, "the trial court must determine first, as a matter of law, whether the issue of punitive damages on account of alleged bad faith should be submitted to a jury." Cossitt v. Federated Guaranty Mutual Insurance Co., 541 So.2d 436, 443 (Miss. 1989). "[I]f an insurance company has a legitimate or arguable reason for denying a claim, then such will utterly preclude the submission of the issue of punitive damages to the jury." Pioneer Life Insurance Co. of Illinois v. Moss, 513 So.2d 927, 930 (Miss. 1987). The lack of a legitimate reason does not mean that the issue of punitive damages will automatically go to the jury. "In the absence of an arguable reason for denying a claim, there is a jury issue as to the insurer's having committed a willful or malicious wrong, or acted with gross or reckless disregard for the insured's rights. If not, the question of punitive damages should not go to the jury." Pioneer Life, 513 So.2d at 930.
In this case, the trial court found that MIGA could not be liable for punitive damages in any case. In reaching this decision the trial relied on Isaacson v. California Insurance Guaranty Association, 193 Cal. App.3d 93, 215 Cal. Rptr. 652 (2 Dist. 1985). Although this decision has been superseded by Isaacson v. California Insurance Guaranty Association, 44 Cal.3d 775, 244 Cal. Rptr. 655, 750 P.2d 297 (Cal. 1988), the latter decision affirmed the denial of punitive damages without mentioning them or providing any rationale for doing so. In the original decision, the court gave the following reasons for its decision:
[W]e accept respondent's argument that CIGA's nature as a legislative creation designed to protect the public from the insolvency of insurers, with definite limitations on the payments of covered claims, negates the rationale for imposition of punitive damages on CIGA.
As this division recently stated in Magallanes v. Superior Court (1985) 167 Cal. App.3d 878, 213 Cal. Rptr. 547, denying punitive damages in a case based on the market share theory of liability, "`The concept of punitive damages embodies a rule for individualized punishment of a wrongdoer whose conduct toward the plaintiff is particularly outrageous.'" (Emphasis in original.) Aside from the difficulty of assessing CIGA's net worth, upon which the recovery of punitive damages is usually based, we are confronted with the nature of CIGA as an association of certain insurers (Ins.Code, § 1063), funded by premium payments from its member insurers (Ins.Code, § 1063.5), which ultimately receive their funding from the insured public. Imposing punitive damages on an individual insurer makes sense; presumably, its premiums will rise and its customers *134 will seek coverage from insurers with lower premiums. The impact on the insured public in such a case is not counter to the punitive and deterrent purposes sought to be achieved by the imposition of punitive damages.
However, if punitive damages are imposed on CIGA, the increased premiums would be spread among all insurers, and ultimately to all insureds, regardless of the culpability of the individual insurer. There might indeed be a deterrent effect on CIGA; but compensatory damages will achieve that effect, without the possible devastating effect on the public. Appellants are not entitled to recover punitive damages against CIGA.
Isaacson, 215 Cal. Rptr. at 666-667. This rationale is applicable in this case, in that the portion of the summary judgment ruling denying punitive damages is correct. We find that as a matter of law, MIGA cannot be liable for punitive damages.
As to whether MIGA acted in bad faith as a matter of law, the trial court was correct in its finding. In this case there was contradictory testimony, and undisputed facts and testimony from which multiple interpretations could be drawn. Also, at the time the summary judgment motion was ruled on, there had not been an opportunity for full development of the facts. This Court recently stated that "[w]here evidence is produced either of bad faith or negligence, ordinarily the issue becomes one for the jury." Hartford Acc. & Indem. Co. v. Foster, 528 So.2d 255 (Miss. 1988). This matter contained multiple genuine issues of material fact, and the trial court's denial of summary judgment was correct.

IV. THE TRIAL COURT ERRED IN DENYING KITCHENS' MOTION TO ADD THE EXECUTIVE DIRECTOR AND BOARD MEMBERS OF THE MISSISSIPPI INSURANCE GUARANTY ASSOCIATION AS DEFENDANTS.
Miss. Code Ann. § 83-23-133 (1972) states:
There shall be no liability on the part of and no cause of action of any nature shall arise against any member insurer, the association, its agents or employees, the board of directors, or the commissioner or his representatives for any good faith, affirmative action taken by them in the performance of their powers and duties under this article. Said immunity shall not extend to any acts of negligence by any such agents, employees, member of the board of directors, commissioner, or his representative committed in the performance of their duties hereunder.
It appears that a potential suit against individual agents of MIGA is clearly acknowledged or allowed by statute and not prohibited, if the action in question involves negligence or bad faith. MIGA relies principally on Griffin v. Ware, 457 So.2d 936 (Miss. 1984), arguing that its agents were acting on behalf of a disclosed principal, MIGA, and could not be liable for an alleged tort arising out of a contractual relationship. Kitchens, Inc., relies on Leathers v. Aetna Cas. & Sur. Co., 500 So.2d 451 (Miss. 1986), which holds that, in a case where an insurance agent's actions may result in liability for the principal, "[the] general rule in tort is that the agent or servant, the one whose conduct has rendered his principal liable, has individual liability to the plaintiff. In many contexts the principal thereafter has indemnity rights against the agent." Leathers, 500 So.2d at 453. One later case attempting to clarify the distinction between Griffin and Leathers is Schoonover v. West American Ins. Co., 665 F. Supp. 511 (S.D.Miss. 1987). Schoonover explained the difference as follows:
In Leathers, the Mississippi Supreme Court declines to decide whether Leathers states a claim against Johanna Rice; it does not overrule Griffin v. Ware. The general rule in tort to which the Court refers is not inconsistent with the holding of Griffin v. Ware. An individual generally may be held liable jointly with a corporation for a tort he commits as an agent of the corporation. Griffin v. Ware establishes only that the "tort" of breach of "an implied duty of good faith and fair dealing," being a hybrid of *135 contract, is not a tort in the general sense.
Schoonover, 665 F. Supp. at 516 (citations omitted). Schoonover goes on to say that to claim punitive damages against agents, when such an award would be calculated based on the net worth of the insurer, would be unjustifiable and abusive. Considering that punitive damages are not available here such a rationale would be inapplicable.
Kitchens, Inc., moved for permissive joinder under Miss.R.Civ.P. 20. The rule appears to be applicable to this situation, as the relief sought by Kitchens, Inc., against MIGA and its agents arises out of the same transaction, occurrence, or series of transactions or occurrences, and there is a question of law or fact common to the proposed defendants. Federal appellate courts identify the appropriate standard of review as whether the trial judge abused his discretion when allowing or denying joinder. See Fenton v. Freedman, 748 F.2d 1358, 1361 (9th Cir.1984); Saval v. BL Ltd., 710 F.2d 1027, 1031 (4th Cir.1983). The better choice would have been to allow joinder, but we find, considering the uncertain state of the law, that the trial court's denial of joinder was not an abuse of discretion.
This Court, on the controverted and substantial evidence presented by the parties in the court below, finds that the verdict of the jury against Kitchens, Inc. should be affirmed. It does appear that MIGA received protection from the statutory limitations and restrictions (and from a lack of case law construing the statute). This protection is not unintended by the legislative enactment. Miss. Code Ann. §§ 83-23-101 to -137 direct that MIGA step into the shoes of Excalibur insofar as assuming Excalibur's liability, while not exceeding the statutory limitation of liability of $300,000. MIGA's responsibility in acting in the place of Excalibur Insurance toward Kitchens, Inc., was presented to the jury, along with attempts to prove bad faith and entitlement to punitive damages. This was allowed despite the protection of Miss. Code Ann. § 83-23-133, which grants immunity to the Association itself so that its involuntary members might be protected. The sole purpose of the statute is to protect the insured from insolvent insurance companies and to require the financially healthy insurance companies to involuntarily contribute to protect the public. The statutes are of good purpose. Because of MIGA's involuntary nature the Legislature rightfully placed limitations on the liabilities of Association members. Even so restricted, however, we are to achieve the purpose of protecting the public or claimants against financial loss because of insolvency of insurers. To achieve this desirable result we must liberally construe the statute creating MIGA by the express terms of the statute. Mississippi Insurance Guaranty Ass'n v. Gandy, 289 So.2d 677 (Miss. 1973). Miss. Code Ann. § 83-23-115(1)(b) declares that the Association is "deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent." While the Association is protected by the statutory limitation of $300,000, it is also required by statute to assume the insurer's duties and obligations, which included Excalibur's duty to defend the insured. In Mississippi Insurance Guaranty Ass'n v. Vaughn, 529 So.2d 540, 542 (Miss. 1988), this Court said, "We seek the best statement of policies and principles ..." and "afford the statute that reading most coherent in principle, given the entire statutory scheme... ." Excalibur's duty to defend the insured is detailed by the following provision found in Kitchens Inc.'s policy with Excalibur:
We have the right and duty to defend, with attorneys of our choice, any suit asking for these damages, but this does not include our defending any suit for damages not covered by the policy. We may make any investigation, negotiation and settlement of a claim or suit that we consider necessary. Our payment of the limit of liability provided by this policy ends our duty to defend or settle.
This duty was completed when and only when MIGA complied with the statute and the Excalibur contract to its fullest extent, *136 and paid into the court $300,000. Until the full payment was made, MIGA stood as Excalibur in relation to Kitchens, Inc. MIGA is also protected by the failure of Kitchens, Inc., to defend itself as to the claim by the estate of Mulloy, and further by Kitchens Inc.'s failure to appeal the jury verdict in favor of the estate of Mulloy. MIGA has done that which it is finally required to do by statute  pay in its $300,000. Until such payment it had a statutory and contractual responsibility to pay or defend. All of the pertinent facts and allegations of failure to timely pay or defend were presented to the jury, and the jury found that MIGA had evaluated the Mulloy claim and concluded that a reasonable settlement offer had been made and that nothing was owing from MIGA to Kitchens, Inc. The other points raised on appeal have been considered by this Court and need not be discussed.
The judgment of the Madison County Circuit Court is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, and BLASS, JJ., concur.
DAN M. LEE, P.J., not participating.