881 So.2d 832 (2003)
Shelia DUPREE, Individually, and as Conservator of the Person and Estate of Annie Sanders, Appellant,
v.
PLANTATION POINTE, L.P., d/b/a, The Windsor Place, Appellee.
No. 2002-CA-00556-COA.
Court of Appeals of Mississippi.
September 9, 2003.
Rehearing Denied November 25, 2003.
*833 Tylvester Otis Goss, Jackson, Constance Slaughter Harvey, Forest, attorneys for appellant.
James P. Streetman, Wade G. Manor, Jackson, attorneys for appellee.
EN BANC.
MYERS, J., for the Court.
¶ 1. Shelia Dupree sued Plantation Pointe, L.P. individually and on the behalf of her mother, Annie Sanders, after Sanders was sexually assaulted at Windsor Place nursing home, a business of Plantation Pointe. The trial judge granted a directed verdict on the issue of mental and emotional damages of Dupree. A jury verdict was returned in favor of Plantation Pointe on the other claims. After denial of the plaintiff's motion for a judgment notwithstanding the verdict and motion for new trial, Dupree perfected her appeal asserting:
1. THE TRIAL COURT ERRED IN DENYING THE MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND IN THE ALTERNATE MOTION FOR A NEW TRIAL;
2. THE TRIAL COURT FAILED TO PROPERLY INSTRUCT THE JURY; AND
3. THE COURT ERRED IN EXCLUDING TESTIMONY CONCERNING MENTAL AND EMOTIONAL DAMAGES AND BY GRANTING A DIRECTED VERDICT ON THE ISSUE.

STATEMENT OF FACTS
¶ 2. Annie Sanders, a seventy-six-year-old female, was a resident of Windsor Place. Plantation Pointe, the defendant in the instant case, does business as Windsor Place. Uncontradicted testimony showed that Sanders was totally dependant and bedridden. She was unable to take care of or defend herself or communicate. She entered Windsor Place as a resident on November 15, 1999.
*834 ¶ 3. On December 2, 1999, Otis Duff, a seventy-eight-year-old male, who was another Windsor Place resident was discovered in Sanders' room. Duff was on top of Sanders with his pants down and penis exposed. Duff had spread Sanders' legs apart and was moving his hips in a rocking motion. Duff had pinned Sanders' arms down to prevent any possible resistance.
¶ 4. Duff had been admitted to Windsor Place on July 30, 1999. Duff was over six feet tall and weighed at least 170 pounds. During the early part of his stay at the Windsor Place, he had been temporarily moved to another facility due to his behavior. That facility was more secure and able to handle Duff. Sherry Davis, the nursing administrator for Windsor Place, testified that reports from Windsor Place showed Duff to be verbally and physically abusive to staff. Duff would try to kick and bite staff members. He had at one point threatened to kill the staff members.
¶ 5. Duff also tried to kiss some staff members and made crude references to sex on numerous occasions, including walking through the halls naked. On November 29, 1999, Duff made one such comment to a Windsor Place office worker that she should "come back later so [they could] f* * * because [he] love[s] big women." Duff ended this remark by grabbing his penis and shaking it at her. Duff later made another similar comment to a dietary staff member. This time it was: "Come on in and let's go to bed. It's up and I'm ready to f* * *. Are you ready?"
¶ 6. Duff was also known to have gone into other residents' rooms and wander the premises on numerous occasions. On November 18, 1999, Duff was found in another resident's room wearing only a shirt. Davis admitted that one could assume that if Duff would hurt the staff he would hurt residents.
¶ 7. Davis' testimony is quite confusing. At one point she was asked:
Q. My question was would you agree with me that the Windsor Place at least failed Ms. Sanders as it relates to this particular policy to provide safeguard against any kind of harsh or abusive treatment?
A. I don't think that she received treatment, nor do I think that she was sexually abused at this point.
¶ 8. Later Davis admitted that sexual abuse was not tolerated at Windsor Place and the nursing home failed to protect Sanders from a sexual assault.
¶ 9. Davis testified that Windsor Place gave residents documents concerning dignity, respect, and safety. Upon reading the following mission statement for Windsor Place, Davis admitted that the nursing home violated the statement as it related to Sanders:
The facility is dedicated to offering to the public the finest in nursing and rehabilitation for the aged and convalescent. The Windsor Place also provides activities involving pets, children, plants and volunteers to promote emotional and physical well-being.
¶ 10. And upon reading the following resident abuse policy for Windsor Place, Davis admitted that the nursing home violated the policy of not tolerating abuse as it related to Sanders:
It is the policy of this facility to report all incidents of resident abuse to appropriate State and federal officials or agencies: 1. Resident abuse, whether physical or mental, will not be tolerated. Resident abuse is reported to authorities governing our facility.
¶ 11. Dee DaCosta, a charge nurse at the Windsor Place who was working at the time of the attack, testified that Sanders was attacked by Duff. She also testified *835 that she had reported the attack anonymously to the Attorney General's Office.
¶ 12. Debbie Porter and Kimberly Thompson, both certified nursing assistants working at the Windsor Place at the time of the attack, testified that they were told to clean Sanders after the attack. This was the nursing home policy for when residents had to be transported to a hospital. Both also testified as to the abusive nature of Duff. Thompson testified as to Duff's sexual advances made to staff.
¶ 13. Crystal Harris, a certified nursing assistant working at the Windsor Place at the time of the attack, testified as to the abusive nature of Duff, including sexual advances toward employees and residents.
¶ 14. Sandra Stewart, a licensed practical nurse at the Windsor Place who was working at the time of the attack, testified that she was the one who discovered Duff in Sanders' room. She also testified that Duff was known to have been combative toward staff.
¶ 15. Expert testimony was also presented. One of the plaintiff's experts testified as to the inappropriate measures the nursing home took in regard to Duff. Another expert testified as to Sanders' mental and emotional state, although he was unable to give precise damages because of her already diminished capacity.
¶ 16. Dupree filed suit in the Circuit Court of Lauderdale County on March 13, 2000. The claim filed on her mother's behalf alleged that Windsor Place had represented that quality care would be provided, specifically that no sexual abuse would occur. Dupree also claimed that she suffered mental and emotional distress when she learned of the assault.
¶ 17. Prior to trial, Plantation Pointe filed a motion in limine to exclude the testimony of mental and emotional distress of Dupree. The trial court granted the motion. The case was tried February 5 through February 7, 2002. At the conclusion of the plaintiff's case in chief, Plantation Pointe moved for a directed verdict on the issue of Dupree's mental and emotional damages. The motion was granted. At the conclusion of the trial, the judge refused to grant a jury instruction offered by the plaintiff that would allow the jury to consider mental and emotional damages of Dupree. The jury returned a verdict, ten to two, in favor of Plantation Pointe. The plaintiff filed a motion for a judgment notwithstanding the verdict or in the alternate a new trial. The motion was denied. The plaintiff perfected the appeal.

LEGAL ANALYSIS
¶ 18. The statute states as follows:
A motion for j.n.o.v. is the equivalent of challenging the sufficiency of the evidence to support the jury's verdict. A jury verdict can only be set aside when it is based on legally insufficient evidence or it is against the substantial weight of the evidence. Furthermore, we review "the evidence as a whole, taken in the light most favorable to the verdict" and will reverse only if "no reasonable, hypothetical juror could have found as the jury found."
Brandon HMA, Inc. v. Bradshaw, 809 So.2d 611, 615-16 (¶ 13) (Miss.2001) (citations omitted).
¶ 19. The motion for a new trial should only be employed in those rare cases when there would be injustice either in allowing the verdict to stand or in granting a JNOV. C & C Trucking Co. v. Smith, 612 So.2d 1092, 1099 (Miss.1992). Mississippi Rules of Civil Procedure 59 authorizes a trial judge to set aside a jury verdict and to grant a new trial as justice requires. A new trial may be granted "when the verdict is against the overwhelming weight of the evidence, or when the jury *836 has been confused by faulty jury instructions, or when the jury has departed from its oath and its verdict is a result of bias, passion, and prejudice." Bobby Kitchens, Inc. v. Miss. Ins. Guar. Ass'n, 560 So.2d 129, 132 (Miss.1989); Griffin v. Fletcher, 362 So.2d 594, 596 (Miss.1978). A trial judge's denial of a request for a new trial will only be reversed when such a denial amounts to an abuse of the trial judge's discretion. Bobby Kitchens, Inc., 560 So.2d at 132; Maxwell v. Ill. Cent. Gulf R.R., 513 So.2d 901, 908 (Miss.1987). We give substantial weight, deference, and respect to the decision of the trial judge. C. & C. Trucking Co., 612 So.2d at 1099.
¶ 20. It is apparent that the trial judge abused his discretion when he failed to grant a new trial. The testimony is uncontradicted. Sanders was a resident at the Windsor place. She was unable to care for or protect herself.
¶ 21. Duff was also a resident at the Windsor Place. He was known to wander into other resident's rooms. He was known to be abusive, both with physical violence and crude sexual displays and comments. Uncontradicted testimony from current and former employees of the Windsor Place substantiate this.
¶ 22. Duff sexually assaulted Sanders in her room at the Windsor Place. The nursing home was to provide a safe residence for Sanders. The overwhelming weight of the evidence shows they were aware of the potential danger Duff posed and did not take action to prevent it. Davis admitted that if Windsor Place had taken some action in regard to the notice, the sexual assault on Sanders would not have occurred. It is for this reason we reverse and remand for a new trial on Sanders' claim.
¶ 23. We decline to review the issue regarding the failure to give a proposed peremptory instruction. Since a new trial is granted, the issue is moot.
¶ 24. As for Dupree's claim for mental and emotional damages, the law is clear. The factors important in determining whether a defendant should reasonably foresee injury to a plaintiff, thereby owing a duty of care are: (1) whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it; (2) whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and (3) whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship. Summers ex rel. Dawson v. St. Andrew's Episcopal School, Inc., 759 So.2d 1203, 1210(¶ 25) (Miss.2000). Dupree was not near the assault scene. While we agree it would be quite traumatic to receive news that your mother was sexually assaulted, the facts in this case do not lend themselves to third person recovery. Therefore, we affirm on the issue of Dupree's claim for mental and emotional damages.
¶ 25. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. COSTS OF THIS APPEAL ARE TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.
KING, P.J., BRIDGES, THOMAS, IRVING, AND CHANDLER, JJ., CONCUR. GRIFFIS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY McMILLIN, C.J., AND SOUTHWICK, P.J. LEE, J., NOT PARTICIPATING.
*837 GRIFFIS, J., CONCURRING IN PART AND DISSENTING IN PART:
¶ 26. I concur with the majority's decision to affirm the trial court's directed verdict of Ms. Dupree's claim for mental and emotional damages.
¶ 27. However, I respectfully dissent to the majority's decision to reverse and remand for a new trial. The majority properly states the standard for our review of the trial court's denial of the motion for new trial, and I will not duplicate this statement of the law. I differ with the majority's decision that the trial judge abused his discretion in denying the motion for new trial. I disagree with the majority's characterization that the "testimony is uncontradicted." Indeed, I am of the opinion that it was well within the sound discretion of the trial judge to deny the motion for new trial.
¶ 28. The majority does not state which portion of Mississippi Rule of Civil Procedure 59 it relies upon. Rule 59 allows a new trial if the verdict is against the overwhelming weight of the evidence, when the jury has been confused by faulty jury instructions, or when the jury has departed from its oath and its verdict is a result of bias, passion, and prejudice. Bobby Kitchens, Inc. v. Miss. Ins. Guar. Ass'n, 560 So.2d 129, 132 (Miss.1989). Here, apparently, the majority finds that the trial judge abused his discretion in not granting a new trial because the jury's verdict was against the overwhelming weight of the evidence.
¶ 29. "In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." Herrington v. Spell, 692 So.2d 93, 103 (Miss.1997). The jury is the ultimate judge of the weight of the evidence and the credibility of the witnesses. Jackson v. Griffin, 390 So.2d 287, 289 (Miss.1980). "Because of the jury verdict in favor of the appellee, this Court will resolve all evidentiary conflicts in the appellee's favor and will draw all reasonable inferences which flow from the testimony given in favor of the appellee." Southwest Miss. Reg'l Med. Ctr. v. Lawrence, 684 So.2d 1257, 1267 (Miss.1996) (quoting Bobby Kitchens, Inc. v. Miss. Ins. Guar. Ass'n, 560 So.2d 129, 131 (Miss.1989)). This Court should not set aside the jury's verdict unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Herrington, 692 So.2d at 104. The basis for this high standard is our deference to the constitutional duty of the jury in rendering its verdict. Burrell v. State, 613 So.2d 1186, 1191 (Miss.1993).
¶ 30. In this negligence action, Ms. Sanders had the burden of producing evidence that was sufficient to establish that Windsor Place breached the traditional negligence elements of duty, breach of duty, proximate cause and injury. May v. V.F.W. Post No. 2539, 577 So.2d 372, 375 (Miss.1991). The jury considered the evidence and rejected Ms. Sanders' claims.
¶ 31. There is nothing in the record that would indicate the jury did anything other than fulfill its sworn duty to resolve the disputed issues of fact, which necessarily included the issue of whether Ms. Sanders carried her burden of proof by a preponderance of the evidence that Windsor Place was negligent or that damages were proximately caused by any negligent act. There was substantial evidence presented that Windsor Place did not breach its duty to protect Ms. Sanders. As to the damages element of negligence, there was also significant evidence presented that an actual *838 sexual assault had not occurred and that no injury had been sustained.
¶ 32. The trial judge had three separate opportunities to review the evidence presented and determine whether the jury should be allowed to render a verdict: (1) the motion for directed verdict after the plaintiff rested, (2) the motion for directed verdict after the close of evidence, and (3) the motion for judgment notwithstanding the verdict, pursuant to Mississippi Rule of Civil Procedure 50. The trial judge declined to do so at each of these three opportunities, allowed the jury to consider the case on the merits and allowed the jury's verdict to stand. Then, after hearing the evidence and argument presented by both parties, the trial judge specifically rejected the motion for new trial. Thus, on four separate occasions, the trial court declined to direct a verdict or grant a new trial. Substantial deference should be given the trial judge's decision. Odom v. Roberts, 606 So.2d 114, 118 (Miss.1992).
¶ 33. Contrary to the majority's conclusion that the "testimony is uncontradicted," I find that Ms. Sanders did not present uncontroverted evidence as to the negligence of Windsor Place or her damages. Although Ms. Sanders presented evidence in support of her claim, that Windsor Place owed a duty of care and that the duty was breached, there was also substantial credible evidence to the contrary. Additionally, there was no evidence presented to substantiate Ms. Sanders' injuries or damages. A discussion of the evidence presented at the trial is necessary.
¶ 34. On December 2, 1999, a nurse employed at Windsor Place found Otis Duff, an Alzheimer's patient in the nursing home, in Ms. Sanders' room. Mr. Duff had his pants down and penis out, and he was in the bed on top of Ms. Sanders moving his hips in an up and down motion. Ensuing medical examinations did not reveal that an actual "sexual assault" had occurred. There was no evidence any sexual touching or rape of Ms. Sanders had occurred.
¶ 35. At trial, Sherry Davis, the administrator of Windsor Place, was called to testify by the appellants as an adverse witness. She testified that all residents, including Ms. Sanders, are protected to the best of the nursing home's ability and that Windsor Place was not negligent in its care of Ms. Sanders. Ms. Davis further testified that the incident involving Ms. Sanders was reported, as required by statute, to the attorney general and was investigated by the Mississippi State Department of Health. Upon the completion of this investigation, the Mississippi State Department of Health found that Windsor Place was not negligent in its treatment and protection of Ms. Sanders.
¶ 36. Ms. Davis also testified to the duties owed to Mr. Duff and that despite their knowledge of Mr. Duff's sexual behavior,[1] Windsor Place did not have the authority to transfer a nursing home resident to another facility. Only the resident's family or treating physician may transfer a resident to another facility. See 42 C.F.R. § 483.40 (only a physician may admit an individual to another facility). Ms. Davis further testified that they discussed Mr. Duff's behavior with his physician and psychiatrist, who had the authority to transfer him, but they chose not to do so.
*839 ¶ 37. Ms. Dee DaCosta, a registered nurse, was on duty on the night of the alleged incident. Ms. Sanders' counsel elicited testimony from Ms. DaCosta that in her opinion the nursing home was negligent. However, when she was asked to point out specific actions or inactions of the nursing home staff to substantiate such claim, she was unable to do so. Ms. DaCosta, however, testified that on the night of the incident the nursing home was properly staffed. She testified that no member of the nursing home staff did anything improper in the treatment of Ms. Sanders and that every step was taken to protect the residents from Mr. Duff. Ms. DaCosta further testified that only a doctor had the power to restrain or transfer Mr. Duff and that the doctors did not do so.
¶ 38. Crystal Harris, a certified nurse's aide at Windsor Place, testified that Windsor Place was not ignoring Mr. Duff in his care and supervision. Also, Kimberly Thompson, a certified nurse's aide at Windsor Place, testified that she provided more of her attention to Mr. Duff when he was combative and paid close attention to Ms. Sanders.
¶ 39. Two additional registered nurses working on the night in question, Ms. Kimberly Thompson and Ms. Sheila Glover, testified that the nursing home did not deviate from the standard of care owed to Ms. Sanders. Ms. Glover even testified that Windsor Place made numerous unsuccessful attempts to have Mr. Duff transferred. Ms. Glover also testified to the countless number of conversations that the nursing staff had with the treating physicians regarding Mr. Duff's behavior. Lastly, Ms. Glover testified that neither she, any nursing staff, nor the administration had the authority to transfer Mr. Duff from the facility.
¶ 40. Sandra Stewart, a geriatric nurse for over twenty-two years, testified that Windsor Place provided appropriate care for both Ms. Sanders and Mr. Duff. She also recalled communicating with Mr. Duff's treating physicians regarding his behavior throughout his residency. She did not believe that anyone at Windsor Place was negligent in the care of Ms. Sanders, even in light of this unfortunate incident.
¶ 41. Kathleen Meyers testified as an expert witness for Ms. Sanders. Ms. Meyers offered testimony that she believed Windsor Place to have been negligent in two respects: failure to transfer Mr. Duff and failure to adequately assess and plan for Mr. Duff's care and treatment. However, on cross-examination, Ms. Meyers admitted that ordering the transfer of a resident is within the exclusive purview of the treating physician, not Windsor Place. Further, Ms. Meyers offered no testimony of proposed treatment that she believed would have prevented the incident. Ms. Meyers admitted that wandering in and out of other residents' rooms was a common characteristic of Alzheimer's and dementia patients, such as Mr. Duff. Further, she admitted that nursing homes were only allowed to restrain residents after those residents had met requirements outlined in state and federal regulations, which were not present here. See 42 CFR § 483.13(a) (resident has a right to be free from any physical or chemical restraints). Kathleen Meyers further testified that Ms. Davis, as an administrator, had no authority to override, change or substitute any doctor's order. She testified that the Windsor Place employees were correct in documenting and communicating Mr. Duff's behavior with the doctors and in following the doctor's orders.
¶ 42. In addition to liability, Ms. Sanders' injuries and damages were also contested at trial. Dr. David Marion testified about Ms. Sanders' injuries. Dr. Marion *840 testified that he only observed Ms. Sanders on one occasion and that he did not review all of her medical records. On cross examination, Dr. Marion conceded that he could not testify to a reasonable degree of medical certainty as to how the alleged incident affected Ms. Sanders.
¶ 43. Ms. Kimberly Thompson and Ms. Debbie Porter, both certified nurse's aides working on the night in question, testified that when they went into Ms. Sanders' room after the incident. They testified that Ms. Sanders appeared to be calm and not agitated, as if nothing unusual had occurred.
¶ 44. No other evidence as to damages allegedly suffered by Ms. Sanders was presented. The plaintiff presented no evidence to establish that Ms. Sanders incurred a physical injury or that she was conscious enough to know that the incident even occurred. There was no evidence of any bleeding, discharge, bruising, cuts, scratches or scraping to the skin of Ms. Sanders and no evidence of any sexual touching or penetration. Indeed, nothing was presented to establish that she was harmed or injured by the incident.
¶ 45. The Mississippi Supreme Court has held that "unless it is clear to this Court that the verdict is contrary to the overwhelming weight of the credible testimony, this Court will not set aside a jury verdict." Brandon HMA, Inc. v. Bradshaw, 809 So.2d 611, 618(¶ 18) (Miss.2001). The weight of the evidence is clearly not overwhelmingly contrary to the jury's verdict. Keeping in mind all of the evidence presented, the jury's verdict does not rise to the level that would shock one's conscience. In fact, as stated above, there is substantial credible evidence in the record that supports the jury's verdict. The jury considered this evidence, weighed it, and found in favor of Windsor Place. Questions of negligence are to be determined by the jury. Upchurch ex rel Upchurch v. Rotenberry, 761 So.2d 199, 204(¶ 21) (Miss.2000). The jury, in such cases, sits as the trier of fact responsible for determining issues of credibility and what weight and worth to assign to the various aspects of the proof submitted. Scott Addison Constr., Inc. v. Lauderdale County School Sys., 789 So.2d 771, 773(¶ 8) (Miss.2001).
¶ 46. Likewise, the trial judge was present throughout the trial, and he considered the evidence, weighed it and determined that there was sufficient evidence to deny the plaintiff's motion for judgment notwithstanding the verdict and for new trial. Therefore, I find that the trial judge did not abuse his discretion in denying a new trial and find that the jury's verdict should be affirmed.
McMILLIN, C.J., AND SOUTHWICK, P.J., JOIN THIS SEPARATE OPINION.
NOTES
[1] Ms. Davis also testified that it is common for Alzheimer's patients, especially men, to talk and act in a sexually suggestive manner. She also testified that Mr. Duff had never exhibited any behavior that would indicate he intended to act upon his sexual remarks nor did he indicate any propensity to attack another resident.