614 So.2d 959 (1993)
MISSISSIPPI INSURANCE GUARANTY ASSOCIATION
v.
Donna L. BYARS, Guardian of Russell E. Byars, NCM.
No. 90-CA-1035.
Supreme Court of Mississippi.
February 25, 1993.
Rehearing Denied April 8, 1993.
*960 Robert H. Pedersen, Watkins & Eager, Jackson, for appellant.
W. Stephens Cox, Merkel & Cocke, Clarksdale, L. Anthony Deal, Memphis, TN, for appellee.
Before PRATHER, P.J., and PITTMAN and SMITH, JJ.
PITTMAN, Justice, for the Court:
This is an appeal from the Circuit Court of Hinds County, wherein the appellee, Donna Lee Byars, guardian of Russell Byars, NCM, was awarded summary judgment in a suit seeking coverage under the Mississippi Insurance Guaranty Association (MIGA) Law. The lower court found that Byars's insurance claim was within the coverage of the appellant MIGA, and Byars was awarded the statutory maximum coverage of $300,000 plus 8% pre-judgment interest. We find that MIGA had a duty to defend as though it were Mission National Insurance Company or pay the policy proceeds on behalf of Mission National Insurance Company, and having decided not to defend, is liable for the $300,000 policy coverage to the appellee Byars. The lower court is hereby affirmed.

I.
The facts in this case are not in dispute. While enlisted in the Navy and stationed in Virginia, Russell Byars was involved in a near fatal motorcycle accident on October 3, 1983, in Virginia Beach, Virginia. At *961 that time, the nineteen year old Byars was a passenger on the back of a motorcycle being driven by his friend, Christopher Grieves, who was also in the Navy. Apparently both Grieves and Byars had been drinking earlier that evening and while driving, decided to pass a line of cars on a turn. When Grieves attempted to get back into the proper lane after passing the cars, he lost control of the motorcycle, sending both Grieves and Byars off the motorcycle. Byars's helmet was shattered upon impact, resulting in severe damage to the frontal region of Byars's brain. This injury reduced Byars's IQ from 98 to 78. Byars has subsequently been diagnosed as 100% disabled by the Navy and presently receives a $1,230 monthly check from the Veteran's Administration.
The extent of Byars's injury was so significant that doctors initially diagnosed him as having a one percent chance of surviving. Following his coming out of a coma, Byars has endured constant rehabilitation, re-learning how to walk, talk, eat, read and groom himself. Presently, Byars lives by himself in a trailer in Walls, Mississippi, a few miles from his mother's home in Horn Lake, Mississippi. Although Russell lives alone, he requires supervision, since he can neither cook his own meals nor perform other housekeeping tasks. Russell is attempting to take some college courses at Northwest Junior College, but is experiencing difficulty in completing classes. Mrs. Byars stated that Russell continues to experience difficulty with his memory, and walks with a limp. In conjunction with his recovery, a plate was put in Russell's forehead for protective as well as cosmetic purposes.
Following the accident, a guardianship was opened for Russell Byars and suit was filed on his behalf in Wayne County, Michigan, naming Land Tool Company, the manufacturer of the helmet, and A.C.O., the retailer of the helmet, as defendants in a products liability action. Land Tool Company, a Kansas Corporation, had two insurance policies in place at the time of the accident. The first was a $1,000,000 liability policy and the other a $10,000,000 umbrella policy. These policies were written through two different insurance carriers. Unfortunately for Byars, when the suit was filed, Land Tool Company was no longer in existence, having been closed by the Internal Revenue Service and having a net worth of minus $4,000,000. To further complicate things, both insurance companies which had issued policies to Land Tool Company had become insolvent. Therefore, Byars looked to the Kansas Insurance Guaranty Association (KIGA) for payment of benefits. KIGA accepted the defense of Land Tool Company, and settled the claim by paying Byars the statutory maximum of $300,000 for each of the two insurance policies. Byars claim against Land Tool was settled by KIGA for a total of $600,000.
A.C.O., the Michigan hardware store where the motorcycle helmet was purchased, was covered by a $500,000 liability policy issued by Mission National Insurance Company. As fate would have it, Mission National also became insolvent. A.C.O. called upon the Michigan Property & Casualty Insurance Guaranty Association (MP & CIGA) to come to its rescue. However, after evaluating the claim, the MP & CIGA denied coverage, citing a Michigan statute which excludes coverage for any claim submitted by a party if that party had a net worth greater than 1/10 of 1% of the premiums written during the prior calendar year by the insurance companies that are members of the MP & CIGA. See Mich. Comp. Laws § 500.7925(3). At the time of the claim, A.C.O.'s net worth was $7,262,697.00 which exceeded the limit permissible under Michigan law. Therefore, A.C.O. was left to defend the action and pay any claims that might result from the accident without any help from the MP & CIGA.
Following MP & CIGA's denial to defend A.C.O. in this suit, Byars made a written demand on MP & CIGA to pay benefits owed as a result of the accident. MP & CIGA again denied coverage, claiming that since Byars was not a Michigan resident, the guaranty association was not liable to him. Byars's attorney notified the Virginia Insurance Guaranty Association (VIGA) of *962 the pending suit in Michigan and of the insolvent insurance carriers. Although the accident occurred in Virginia, VIGA denied coverage on the grounds that Byars was not a Virginia resident, and therefore excluded from that state's guaranty coverage. Next, both Byars and A.C.O. notified the Mississippi Insurance Guaranty Association about its possible exposure due to the insolvency of Mission National. A.C.O. demanded that MIGA assume its defense to the Michigan action and Byars requested that MIGA assume responsibility on behalf of Mission National and participate in upcoming settlement negotiations.
MIGA denied both requests, stating that this was not a "covered claim." Byars then settled with A.C.O. for $375,000. The terms of this consent judgment were that A.C.O. would pay Byars $75,000 cash and assign its rights against MIGA to Byars in exchange for an agreement by Byars not to execute or enforce the $300,000 balance of the judgment against A.C.O. This agreement specifically reserved the right for Byars to collect the $300,000 balance from MIGA.
Following Byars's initial notification to MIGA of the claim, Byars's attorneys were constantly supplying MIGA with additional information for use in evaluating the claim. After informing MIGA of the upcoming settlement conference scheduled for April in Detroit, Michigan, counsel for Byars notified MIGA that if they had not responded to the claim by the time of the scheduled conference, he would have no other alternative but to settle with A.C.O. Counsel for MIGA responded with more requests for information to help evaluate the claim. On May 16, 1988, MIGA sent separate letters to Byars and A.C.O. rejecting their claims after determining that neither claim was a "covered claim" within the meaning of the guaranty law. MIGA contended that they had no information indicating that Byars had a legally enforceable "unpaid claim." In other words, MIGA said until a judgment was rendered, it was not an unpaid claim.
After settling with A.C.O., Byars sent MIGA copies of the Agreement and Release between Byars and A.C.O., the Order Authorizing Settlement of Doubtful Claim, the Consent Judgment and a copy of the transcript of the hearing on the Petition for Settlement Approval. On September 26, 1988, MIGA's counsel wrote Byars's counsel, giving the following new reasons for denial of the claim:
1) That the Consent Judgment of June 13, 1988, did not exist prior to the determination of insolvency nor did it arise within 30 days after the determination of insolvency as provided for by Miss. Code Ann. § 83-23-115(1)(a) (1972).
2) That it was their opinion that Mr. Byars's claim came within the scope of the Michigan Property & Casualty Guaranty Association law, even though MP & CGA had denied coverage.
3) That Byars entered into a release of A.C.O. and Land Tool Company without the permission of the MIGA and under the terms of the settlement agreement did not assign to MIGA any rights that he might have against A.C.O. and Land Tool Company.
As a result of MIGA's denial of the claim, Byars filed suit alleging that MIGA had improperly denied coverage. Both sides moved for summary judgment and the trial judge granted summary judgment to Byars, specifically finding that Byars, as a Mississippi resident, was entitled to coverage under the guaranty statutes. From this ruling MIGA appeals, alleging the following assignments of error:
I. THE TRIAL COURT HAS MISCONSTRUED § 83-23-109(c) OF THE GUARANTY LAW AND ERRED WHEN IT FOUND THAT BYARS'S CLAIM WAS A "COVERED CLAIM" WITHIN THE MEANING OF THAT TERM.
II. THE TRIAL COURT HAS MISCONSTRUED THE EXHAUSTION REQUIREMENT OF § 83-23-123(2) WHEN IT FOUND THAT BYARS DID NOT HAVE TO FILE A LEGAL ACTION AGAINST THE MICHIGAN PROPERTY & CASUALTY INSURANCE GUARANTY ASSOCIATION CHALLENGING ITS DENIAL OF HIS ADMINISTRATIVE *963 CLAIM BEFORE HE FILED AN ACTION AGAINST MIGA CHALLENGING ITS DENIAL OF HIS ADMINISTRATIVE CLAIM.

II.
This Court employs a de novo standard in reviewing a lower court's grant of a summary judgment motion. Short v. Columbus Rubber & Gasket Co., Inc., 535 So.2d 61, 63 (Miss. 1988). This entails reviewing all the evidentiary matters in the record: affidavits, depositions, admissions, interrogatories, etc. The evidence must be viewed in the light most favorable to Byars, the non-moving party, and Byars is to be given the benefit of every reasonable doubt. Smith v. Sanders, 485 So.2d 1051, 1054 (Miss. 1986); Dennis v. Searle, 457 So.2d 941, 944 (Miss. 1984). A motion for summary judgment lies only when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. M.R.C.P. 56(c). This Court does not try issues on a Rule 56 motion, but only determines whether there are issues to be tried.

Lower court findings
In granting Byars's motion for summary judgment, the lower court found Byars's claim to be a "covered claim" pursuant to Miss. Code Ann. § 83-23-109(c). The lower court judge construed the language of § 83-23-109(c), which states that a covered claim includes circumstances where "the claimant or insured is a resident of this state at the time of the insured event." Since both parties had previously stipulated to Byars's Mississippi residency, the trial judge had no difficulty in construing Byars's claim as falling within MIGA law. The trial judge further found that MIGA breached its statutory duty when the association failed to defend Byars and A.C.O. when asked to do so. He found no signs of fraud or collusion between any of the settling parties, and that the settlements entered into were reasonable.
The trial judge found that when MIGA failed to step in the shoes of Mission National to defend A.C.O. and Byars, it breached its contractual obligation, thereby depriving MIGA of the policy defenses which it now attempts to argue. The lower court also found that Byars had no duty to pursue legal action against MP & CIGA upon its denial of Byars's claim before looking to MIGA for coverage. Byars's request for punitive damages was also denied. Since Byars's claim was determined to fall within MIGA law, the trial judge awarded Byars the statutory maximum $300,000 coverage available, plus costs and 8% interest on the $300,000 amount from the date of the filing of the complaint until the date of the trial judge's Order.

III.
The Mississippi Insurance Guaranty Association Law was enacted to protect policy holders of certain kinds of insurance in the event of their insurer's insolvency. MIGA is a statutorily-created unincorporated association consisting of insurance companies doing business in Mississippi. Each solvent insurer doing business in this state is assessed a pro rata share of amounts paid on behalf of insolvent insurers. Bobby Kitchens v. Mississippi Insurance Guaranty Association, 560 So.2d 129, 131 (Miss. 1989); Mississippi Insurance Guaranty Association v. Gandy, 289 So.2d 677, 681 (Miss. 1973). MIGA is prohibited by statute from paying anything other than a covered claim, and the statute further requires that all other sources of insurance must be exhausted before looking to MIGA for any coverage. Id. at 131.
The guaranty law statutes are to be liberally construed in order to achieve the purpose of protecting the public or claimants against financial loss because of the insolvency of insurers. Bobby Kitchens, 560 So.2d at 135; Gandy, 289 So.2d at 681. Further, § 83-23-107 states that "this article shall be liberally construed to effect the purpose under § 83-23-103 which shall constitute an aid and guide to interpretation."
The central question in this case is whether Byars's claim is a covered claim under Mississippi Guaranty Law, pursuant *964 to § 83-23-109(c) of the Miss. Code Ann. which states:
(c) "Covered claim" means an unpaid claim, including one of unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this article applies issued by an insurer, if such insurer becomes an insolvent insurer and (1) the claimant or insured is a resident of this state at the time of the insured event; or (2) the property from which the claim arises is permanently located in this state. "Covered claim" shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise.
The appellant MIGA contends that Byars's claim is not a "covered claim," because the insured, A.C.O., is a Michigan corporation and not a Mississippi resident. However, the above statute clearly requires that the insured (A.C.O.) OR the claimant (Byars) be a resident of Mississippi in order to fall under MIGA's umbrella. Both parties stipulated as to Byars's Mississippi residency. Therefore, a literal reading of § 83-23-109(c) clearly affords the claimant Byars coverage. To rule otherwise would in essence be re-writing the statute. We also note that Mission National does business in Mississippi and is an active contributor to the MIGA fund.
In Bobby Kitchens v. Mississippi Insurance Guaranty Association, 560 So.2d 129 (Miss. 1989), we held that the Mississippi Insurance Guaranty Association law requires that MIGA assume the insurer's duties and obligations, which include the duty to defend the insured. Id. at 135. Therefore, MIGA, under our statute, stepped into the shoes of Mission National Insurance Company and had a duty to either defend the action or pay the policy proceeds to Byars. Because MIGA consciously breached this duty by refusing to attend the settlement conference in Michigan, and refusing in any way to defend the claim of Byars, it is liable to Byars for the maximum amount allowed under Mississippi Insurance Guaranty Law, $300,000.
Next, appellant MIGA argues that Byars's claim is not a covered claim because there was no judgment on the merits. This reasoning, however, is also flawed. Robert Long, who is responsible for MIGA's operations, testified in his deposition that in 99% of the cases, MIGA settles claims without any judgments being entered. The $375,000 Consent Judgment executed on June 13, 1988, is clearly a valid and binding judgment, but just not one of which MIGA approves.
MIGA goes so far as to claim that when Byars entered into a settlement with A.C.O., Byars failed to preserve any defenses or causes of action in which MIGA could be indemnified for any payments which it might have to pay. However, it has long been established that when an insurer breaches its duty to defend an insured, the insurer is liable and bound by any settlement agreements made by the insured as a result of this breach. See Mavar Shrimp and Oyster Co. v. United States Fidelity & Guaranty Co., 187 So.2d 871, 875 (Miss. 1966). The Fifth Circuit reaffirmed this settled rule in Jones v. Southern Marine & Aviation Underwriters, Inc., 888 F.2d 358 (5th Cir.1989), stating:
An insurer that unjustifiably refuses to defend its insured "will be liable for the amount of any settlement even if the applicable policy requires the insurer's consent to any settlement agreed to by the insured." Martin v. Travelers Indem. Co., 450 F.2d 542, 550 (5th Cir.1971) (applying Mississippi law). See also Greenville Shipbuilding Corp. v. Hartford Accident & Indem. Co., 334 F. Supp. 1228 (N.D.Miss. 1971), aff'd, 460 F.2d 1063 (5th Cir.1972) (a Mississippi court would prohibit an insurer from invoking its policy provision requiring consent to settlement, if the insurer unjustifiably denied liability); Mavar Shrimp & Oyster Co. v. United States Fidelity & Guar. Co., 187 So.2d 871, 875 (Miss. 1966) (if an insurer unjustifiably refuses to defend a suit, the insured may make a reasonable settlement for which the insurer will be held liable).
*965 Jones, 888 F.2d at 362. The trial judge determined that the settlement between A.C.O. and Byars was reasonable under the circumstances and that MIGA had been notified at an early juncture of the upcoming settlement conference in Detroit, Michigan. Because MIGA chose not to attend or defend, Byars could settle with A.C.O. MIGA is therefore bound by this settlement agreement and cannot deny coverage now by claiming that Byars did not follow the policy language requiring the insurance company's approval before acceptance of a settlement.

IV.
MIGA also contends that Byars should have exhausted all of his judicial remedies in Michigan before filing a claim with MIGA. Specifically, MIGA asserts that Byars should have challenged the net worth exclusion provided in the Michigan statutes as being unconstitutional. This argument, however, is without merit. Both Byars and A.C.O. had sent written demand on MP & CIGA demanding that they assume responsibility for A.C.O.'s defense in the suit. However, when MP & CIGA denied the claim, that was all that was required before asking MIGA to assume A.C.O.'s defense. If the provision of the statute were to be challenged, it seems logical that A.C.O., not Byars, would have proper standing to initiate this suit.
Nevertheless, the constitutionality of the Michigan statute is now moot. In Borman's, Inc. v. Michigan Property & Casualty Association, 925 F.2d 160 (6th Cir.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 85, 116 L.Ed.2d 58 (1991), the Sixth Circuit reversed a district court ruling and upheld the constitutionality of the net worth exclusionary provision. Even if it were determined that A.C.O. or Byars had a duty to challenge the statute's constitutionality, the Sixth Circuit's ruling makes MIGA's claim moot.
Finding that Byars's claim was a covered one under the MIGA law and that MIGA breached its duty to defend or pay the policy proceeds, we hereby affirm the lower court's judgment of $300,000 with pre-judgment interest at a rate of 8%.
AFFIRMED.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, McRAE, ROBERTS and SMITH, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
BANKS, J., not participating.