# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-CA-00193-SCT

*THE MISSISSIPPI GAMING COMMISSION*

*v.*

*TREASURED ARTS, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/09/96 |
| TRIAL JUDGE: | HON. ROBERT LEWIS GIBBS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | J. ROD NIXON |
| | LEYSER Q. MORRIS |
| ATTORNEYS FOR APPELLEE: | TIM WAYCASTER |
| | DAVID WAYNE BARIA |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES (OTHER THAN WORKERS' COMPENSATION) |
| DISPOSITION: | AFFIRMED - 9/11/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/2/97 |

**BEFORE PRATHER, P.J., ROBERTS AND MILLS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. This case was originally filed by Treasured Arts, Inc. (TAI), as a Complaint for Declaratory Judgment and for Other Relief in the Circuit Court of the First Judicial District of Hinds County, Mississippi on May 22, 1995, against the Mississippi Gaming Commission (MGC). The lower court was requested to declare that two products, Dinosaur Art Cards and Treasured Art Phone Cards, did not fit the definition of a lottery and are legally marketable in Mississippi. Both products were marketed with a game piece attached that is similar to "scratch-and-win" game pieces distributed as promotional devices by marketers of other products in the state.

¶2. Each party filed Motions for Summary Judgment, limiting the issues to whether consideration was being paid for the game piece portion of the product, thereby constituting an illegal lottery under the prior holdings of this Court and the laws of Mississippi. There was a factual dispute as to what the

correct retail value was to be attributed to each per minute unit of long distance time. TAI submitted an affidavit showing the price it had to pay for each unit was $.66. The MGC produced an affidavit showing the price charged by another long distance carrier to be $.45 per unit. This potential fact issue was resolved when TAI stipulated to the second affidavit for purposes of the Motions for Summary Judgment only.

¶3. On December 27, 1995, the lower court granted TAI's Motion for Summary Judgment relying on *Williams Furniture Co. v. McComb Chamber of Commerce*, 112 So. 579 (Miss. 1927). MGC appeals the ruling of the lower court raising the following issues:

> **I. WHETHER CONSIDERATION FOR A CHANCE TO WIN A CASH PRIZE WHEN A CONSUMER PURCHASES LONG DISTANCE TIME IN EXCESS OF THE USUAL VALUE OF THE LONG DISTANCE TIME AND RECEIVES THE CHANCE TO WIN A PRIZE.**

> **II. WHETHER THE TREASURED ARTS POWER CALL CARD IS A LOTTERY UNDER THE LAWS OF MISSISSIPPI.**

## STATEMENT OF THE FACTS

¶4. TAI sells the Treasured Arts Power Call Card (Card). The Card costs $2 and allows three minutes of long distance telephone talk time with United States Long Distance (USLD), a long distance telephone service provider. The long distance talk time is prepaid by TAI and is guaranteed to be provided to the purchaser of the Card.

¶5. The Card is perforated, with one side containing a "scratch-and-win" game piece and the other written instructions on how to receive a maximum of three minutes long distance phone time through USLD. The Card may be torn in half, and the purchaser has the opportunity to win monetary prizes ranging from $1 to $50,000 from the "scratch-and-win" game.

¶6. This Card was presented to the MGC for a formal opinion as to its legality. MGC, through its attorney Carole Brand, responded by letter of March 2, 1995, that it would not issue a formal opinion and provided no additional direction to TAI as to the legality of the Card. Subsequently, TAI filed its Complaint in the lower court seeking declaratory judgment.

¶7. The MGC initially took the position that a distinction exists between games like the Pepsi Cola bottle cap game or the Jitney Jungle "scratch-and-win" game and the TAI Card game, because in the other games the purchaser receives a valuable product or service in exchange for his money and those game pieces are free. The MGC contended that a purchaser receives nothing of value when purchasing the Card, therefore any consideration paid for the Card is actually consideration for an opportunity to play the game.

¶8. Affidavits submitted to the lower court regarding the price as to retail value of per minute long distance time were conflicting. However, TAI stipulated to the per minute valuation by Miss. Lynn Reeder, a LDDS WorldCom employee, for purposes of the Motions for Summary Judgment. Her affidavit stated that the *PhonePass* pre-paid cards have a retail worth of $.45 per minute, which was the tariffed rate. She continued that the LDDS cards could be sold at a cheaper rate depending on the

retailer.

¶9. The MGC contends that the TAI Card constitutes a lottery in violation of both Mississippi common and statutory law. The MGC states that the Card offers a prize by chance and consideration is given for the chance to win that prize. TAI retorts that neither the MGC nor any other state agency nor the courts of this state on a case-by-case basis should be in a position of determining what any given product is worth to any given consumer thereby establishing what a fair consideration should be for the product.

## DISCUSSION OF THE ISSUES

**I. WHETHER CONSIDERATION FOR A CHANCE TO WIN A CASH PRIZE WHEN A CONSUMER PURCHASES LONG DISTANCE TIME IN EXCESS OF THE USUAL VALUE OF THE LONG DISTANCE TIME AND RECEIVES THE CHANCE TO WIN A PRIZE.**

**II. WHETHER THE TREASURED ARTS POWER CALL CARD IS A LOTTERY UNDER THE LAWS OF MISSISSIPPI.**

¶10. Because these issues are so intertwined and virtually the same such that the answer to one will sufficiently provide an answer to the other, the Court will discuss the two together. To begin, it is necessary to delineate the appropriate standard of review.

¶11. The Court employs a de novo standard of review in reviewing a lower court's grant of summary judgment motion. *Roussel v. Hutton*, 638 So. 2d 1305, 1314 (Miss. 1994). Summary judgment is appropriate if the evidence before the Court--admissions in the pleadings, answers to interrogatories, depositions, affidavits, etc.--shows there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Newell v. Hinton*, 556 So. 2d 1037, 1041 (Miss. 1990). This Court does not try issues on a Rule 56 motion, but only determines whether there are issues to be tried. *Mississippi Ins. Guar. Assoc. v. Byars*, 614 So. 2d 959, 963 (Miss. 1993). In reaching this determination, the Court examines affidavits and other evidence to determine whether a triable issue exists, rather than the purpose of resolving that issue. Comment, Miss. R. Civ. P. 56.

¶12. The common law definition of a lottery is: "(1) The offering of a prize; (2) the awarding of a prize by chance; (3) the giving of a consideration for the opportunity to win the prize; and all three of these elements must concur in order to constitute a lottery." *Williams Furniture Co. v. McComb Chamber of Commerce*, 112 So. 579, 579-80 (Miss. 1927). The offer of a prize and an award are not enough by themselves to be considered a lottery. A purchaser must actually give consideration for the opportunity to win the prize. *Id.*

¶13. The Legislature enacted Miss. Code Ann. § 75-76-3, which incorporates the same three basic elements of consideration, chance and prize. The pertinent portion of that section is set forth as follows:

(6) The Legislature recognizes that Section 98 of the Mississippi Constitution of 1890 prohibits the conducting of any lottery in this state and that, while not defining the term "lottery," Section 98 clearly contemplates, as indicated by specific language contained therein, that a lottery

involves the sale of tickets and a drawing in order to determine the winner. The Legislature also recognizes that Section 98 of the Mississippi Constitution of 1890 directs the Legislature to provide by law for the enforcement of its provisions. Therefore, in carrying out its duties under the Constitution and effectuating the intent of Section 98, the Legislature hereby finds that a lottery, as prohibited by the Constitution, does not include all forms of gambling but means any activity in which:

(a) The player or players pay or agree to pay something of value for chances, represented and differentiated by tickets, slips of paper or other physical and tangible documentation upon which appear numbers, symbols, characters or other distinctive marks used to identify and designate the winner or winners; and

(b) The winning chance or chances are to be determined by a drawing or similar selection method based predominately upon the element of chance or random selection rather than upon the skill or judgment of the player or players; and

(c) The holder or holders of the winning chance or chances are to receive a prize or something of valuable consideration; and

(d) The activity is conducted and participated in without regard to geographical location, with the player or players not being required to be present upon any particular premises or at any particular location in order to participate or to win.

Miss. Code Ann. § 75-76-3 (6)(a-d).

¶14. The parties are in disagreement as to whether a purchaser of a Card actually pays any consideration for the opportunity to chance to win a prize such that there is a violation of subsection (a) of the statute. TAI asserts that the consideration paid for the Card is paid for the card itself and not for the game piece attached. If true, this would mean no consideration is paid for the opportunity to win a prize and the product does not constitute a lottery. However, the MGC claims the purchaser of a Card is paying more than the maximum retail value for per minute long distance time, which results in consideration for the opportunity to win the monetary prizes offered by TAI.

¶15. Here, as in *Williams Furniture Co.*, this Court is called upon to determine whether a promotional scheme is a lottery. In *Williams Furniture Co.*, merchants were permitted to give customers tickets that could be used by the customer on either the purchase of $1 worth of goods or a $1 payment on the customer's account; however, no tickets could be sold to customers. 112 So. at 580. A drawing was held, and prizes awarded to the winning ticket holders. *Id.* The Court found that the promotion did not constitute a lottery, because it lacked the element of consideration for the opportunity to win the prize.

¶16. The MGC attempts to distinguish the case sub judice and *Williams Furniture Co.*, by stating the price of the Card exceeds the usual price of per minute long distance time. Therefore, according to the MGC, something of value is given for the chance to win a prize. The MGC, citing Miss. Reeder's affidavit, inaccurately asserts the **maximum usual** retail value of this type of per minute phone time for long distance is $.45.

¶17. As stated earlier, this Court reviews all the evidence, including affidavits, presented to the lower court prior to its ruling on the Motion for Summary Judgment. The record before this Court presents two separate grounds justifying an affirmance of the trial court.

¶18. The first is presented in the affidavits submitted by each side as to what the price per minute long distance time cost. The MGC provided an affidavit by Miss. Reeder, an employee of LDDS WorldCom. That document indicated what price LDDS WorldCom charged per minute with its *PhonePass* pre-paid phone card. There is no mention in her affidavit as to what the maximum value that could be charged by another long distance server, namely USLD.

¶19. TAI presented an affidavit of Kenneth F. Melley, Jr., who is Vice President of Regulatory Affairs for USLD. Melley stated in that document that the price charged per minute for long distance time by USLD was $.66. He asserted that the wholesale purchaser, in this case TAI, could print the actual cards with images or without images and the price would still remain $.66 per minute as charged by USLD. In other words the price pre-paid per minute for long distance service by TAI was actually $.66.

¶20. In order to avoid a possible genuine issue of material fact, TAI stipulated to the information in Miss. Reeder's affidavit for purposes of a ruling on the Motion for Summary Judgment. However, on appeal the review of the lower court's grant of summary judgment is de novo. Therefore, this Court revisits both affidavits of Mr. Melley and Miss. Reeder. We find that Miss. Reeder's affidavit has no relevance to the facts in this case. The information contained in her affidavit pertains to rates charged by an entirely separate long distance carrier than the one which supplied long distance time to TAI. Any price charged by LDDS WorldCom to its customers has absolutely no bearing on the price charged by USLD. Mr. Melley stated the amount charged for long distance time was $.66 per minute. The Card sold by TAI was priced at $2 and provided three minutes of long distance time. Therefore, each minute cost a fraction over $.66. No consideration over the price actually charged to TAI was paid by the retail purchasers of the Card for an opportunity to win a prize.

¶21. In a capitalistic society competition is the axis on which a free market turns. The MGC's argument that a price charged by one long distance carrier which exceeds the price charged by another is necessarily consideration for an opportunity to win a prize is without merit. The lower court should have never considered the affidavit of Miss. Reeder as binding authority as to what "the maximum retail value" of long distance service should be. Granted it is authority as to what LDDS WorldCom charges for its long distance time. But there is not one scintilla of evidence that what one company charges for long distance time is binding on another as the maximum retail value.

¶22. The affidavit of Mr. Melley clearly shows the price per minute was $.66 for long distance time. The Card was sold for $2 and allowed up to three minutes of long distance service. No consideration over the price of the value of the long distance time was paid by purchasers for an opportunity to win a monetary prize. The lower court correctly granted TAI's Motion for Summary Judgment.

¶23. Second, the lower court relied on the fact that no purchase was actually necessary to obtain a game piece. TAI states that the most compelling indicator that consideration is not paid for the game piece portion of the Card is that TAI gives away the game piece free to anyone who requests it. The rules of the game provided for a procedure for obtaining a free game piece by sending a self-addressed, handwritten, stamped envelope and a 3 x 5 card, with the words "Phone Card 25."

¶24. The MGC responds that in order to obtain a free game piece one has to endure a onerous and complicated process. Because no free game piece is provided where the Card is sold, a consumer has to make a written request through the mail at a cost of $.64 cents for stamps, a minimal cost for a notecard and envelopes, and the time and effort to send for the game piece. The lower court noted the MGC's position in its opinion stating: "Finally, the Gaming Commission points out that while a consumer may obtain a free game piece from Treasured Arts, the process is so onerous as to make it impractical."

¶25. The MGC failed to provide the lower court with any authority or any evidence to support its argument that the process was "so onerous as to make it impractical" to obtain a free game piece. Most importantly the record before this Court is void of any evidence or authority to support this argument. Unsupported assignments of error will not be considered by this Court on appeal. *Ellis v. Ellis*, 651 So. 2d 1068, 1073 (Miss. 1995).

¶26. Notwithstanding the MGC's unsupported assertions, this Court finds that there is nothing "so onerous" about requiring someone who wishes to have a free game piece to submit their request in writing. This is a process that is common in many promotional and sweepstakes type contests. There is no evidence that persons who wanted a free game piece by mail were unable to obtain them by following the prescribed procedures in the contest rules.

## CONCLUSION

¶27. The lower court failed to exclude the affidavit of Miss. Reeder regarding the prices charged by a different long distance carrier than the one providing service to TAI. Prices charged by LDDS WorldCom had absolutely no bearing on prices charged by USLD, which was the long distance carrier used by TAI. Competition and free market enterprise are the foundation of our capitalistic society.

¶28. The unsupported assertion by the MGC that the process to obtain a free game piece by mail is too onerous is not considered by this Court on appeal. Further, such an assertion is without merit. This process for requesting a free game piece from TAI is commonly used in other promotional and sweepstakes type contests. The record is simply void of any evidence showing persons were unable to obtain the free game pieces due to an onerous requirement by TAI.

¶29. The lower court granted summary judgment based on evidence that the Card had some value. The court stated that it mattered not whether the Card was worth $.66 or $.14, it was apparent it was worth something. The court then narrowed its only issue to whether the consideration paid for the Card, which had some value, amounted to the giving of consideration for the game piece, which granted the chance to win a prize. The court then granted summary judgment based on its finding that the Card was an item that had value and consideration was paid for it and concluded no consideration was paid for the game piece. The lower court refused to get into a dispute as to whether the consideration paid for the Card was adequate or not, reasoning that this Court had never done so.

¶30. This is all superfluous due to this Court's de novo standard of review in appeals where summary judgment has been granted. This Court is to review all of the evidence before the lower court to determine if there were no genuine issues of material fact so that the moving party was entitled to a

judgment as a matter of law. The affidavit of Mr. Melley shows that TAI was charged $.66 per minute for long distance time. The Card was sold for $2 for three minutes of long distance usage. The record before this Court supports the lower court's grant of summary judgment in favor of TAI. The MGC did not produced any evidence to refute or call into dispute the fact that TAI used USLD as its long distance carrier and was charged $.66 per minute for long distance time. The only evidence provided by the MGC in the record was the affidavit of Reeder, which stated the prices charged by LDDS WorldCom, not the carrier used by TAI.

¶31. We disagree that the amount of consideration is not at issue for the reasons stated above. Nevertheless, the lower court reached the correct result based on the evidence in the record before this Court. The affidavit of Melley and the fact that the game pieces could be obtained free through the mail support TAI's Motion for Summary Judgment. The MGC provided no evidence in the record to constitute a genuine issue of material fact. Therefore, the Court holds that TAI was entitled to a judgment as a matter of law.

¶32. **AFFIRMED.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, SMITH AND MILLS, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY.**