# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-01450-SCT

*OWENS CORNING*

*v.*

*MISSISSIPPI INSURANCE GUARANTY ASSOCIATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/20/2005 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN, III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ALAN W. PERRY |
| | JAMILA KAMARIA ALEXANDER |
| | MITCHELL F. DOLIN |
| | BRENT F. POWELL |
| ATTORNEYS FOR APPELLEE: | MICHAEL WAYNE BAXTER |
| | CHARLES G. COPELAND |
| | ROBERT LOUIS GOZA |
| | ANDY LOWRY |
| | JAMES D. HOLLAND |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 02/01/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., DIAZ AND RANDOLPH, JJ.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    This appeal comes from the Madison County Circuit Court's grant of the motion for summary judgment filed by the Mississippi Insurance Guaranty Association (MIGA). Aggrieved by that decision, Owens Corning, Inc. (Owens Corning) argues that the trial court erred in finding it could not assert the underlying tort claimants' residency in order to satisfy

the residency requirement of Miss. Code Ann. § 83-23-109 (f). We conclude this argument is without merit and we affirm the judgment of the trial court.

## FACTS

¶2.    Owens Corning is a publicly held Delaware corporation with its principal place of business in Ohio. Between 1953 and 1973 Owens Corning manufactured, sold and installed insulation which contained asbestos. This insulation later became the source of tens of thousands of product liability tort claims. By 1999 Owens Corning had incurred roughly $4.5 billion in total liabilities and defense costs for these claims, including $135 million attributable to claims brought by Mississippi residents.

¶3.    Between September 1979 and September 1982, Owens Corning purchased three insurance policies from Southern American Insurance Company (Southern) with a combined face limit of $17 million. Southern was licensed to transact insurance business in Mississippi, making it a member of MIGA. Southern was declared insolvent and placed in liquidation by a court in Utah where it was then headquartered.

¶4.    In an effort to recoup the losses it suffered due to the asbestos litigation, Owens Corning first sought coverage from the Ohio Insurance Guaranty Association [OIGA]. OIGA denied Owens Corning's claim because Southern was not licensed in Ohio. Owens Corning then turned to MIGA to collect on its insurance policy with Southern. On September 3, 1999, Owens Corning filed the present action for declaratory relief and damages in the Madison County Circuit Court. After a variety of procedural maneuvers, MIGA filed its motion for summary judgment based on Owens Corning's lack of residency.

The trial court, after considering the motions, granted summary judgment for MIGA, finding that Owens Corning could not rely on the underlying tort claimants' residency for the purposes of Miss. Code Ann. § 83-23-109 (f). Owens Corning subsequently perfected this appeal.

## ANALYSIS

¶5.     MIGA asserts that it is a state agency and its interpretation of the Insurance Guaranty Act is entitled to substantial deference. That argument is without merit. It is true that this Court accords great deference to an administrative agency's construction of its own rules and regulations and the statutes under which it operates, and we will not substitute our judgment for the agency's unless the latter's interpretation is arbitrary or unreasonable. *Elec. Data Sys. Corp. v. Miss. Div. of Medicaid*, 853 So. 2d 1192, 1202 (Miss. 2003). However, MIGA is not a state agency, and therefore its interpretation of the Insurance Guaranty Act is not entitled to deference. MIGA is a nonprofit, unincorporated legal entity of which all insurers with the authority to transact insurance in this State are made members. *Miss. Ins. Guar. Ass'n v. Gandy*, 289 So. 2d 677 (Miss. 1973); *see also* Miss. Code Ann. § 83-23-111. MIGA is not an entity akin to the Mississippi Division of Medicaid or any other administrative agency.

¶6.     That being the case, the standard of review applied to the lower court's grant or denial of summary judgment is de novo. *Miss. Ins. Guar. Ass'n v. Byars* 614 So. 2d 959, 963 (Miss. 1993). This entails reviewing all the evidentiary matters in the record: affidavits, depositions, admissions, interrogatories, etc. The evidence must be viewed in the light most

3

favorable to the nonmoving party. *Id.* (citing *Smith v. Sanders*, 485 So. 2d 1051, 1054 (Miss. 1986)). A motion for summary judgment lies only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. This Court does not try issues on summary judgment motions, but only determines whether there are issues to be tried. *Byars*, 614 So. 2d at 963.

¶7. Owens Corning admits that it is not a resident of the State of Mississippi for the purposes of the Insurance Guaranty Act. However, Owens Corning argues that this Court's recent decision in *Byars* would allow it to use the Mississippi residency of the underlying tort claimants in order to meet the statute's definition of covered claims. Before addressing the merits of this central question of this case, it is important to lay the predicate for this Court's canons of construction as applied to the Insurance Guaranty Act. Our traditional analysis requires that a statute receive such construction as will, if possible, make all its parts harmonize with each other, and render them consistent with its scope and object. *Miss. Ins. Guar. Ass'n v. Gandy*, 289 So. 2d 677, 680 (Miss. 1973). In determining the proper construction of a statute, the entire legislation on the subject matter, its policy, reason, as well as the text, must be considered. *Id*.

¶8. This Court has found that the sole purpose of the Insurance Guaranty Act is to protect the insured from insolvent insurance companies and to require the financially healthy insurance companies to involuntarily contribute to protect the public. *Bobby Kitchens, Inc. v. Miss. Ins. Guar. Ass'n*, 560 So. 2d 129, 135 (Miss. 1989); *see also Gandy*, 289 So. 2d at 681. For that purpose the Insurance Guaranty Act requires that courts interpret the act

4

liberally. *See* Miss. Code Ann. § 83-23-107. However, membership in MIGA is involuntary and therefore the Legislature has placed limitations on MIGA's liabilities. **Bobby Kitchens**, 560 So. 2d at 135. MIGA is prohibited, by statute, from paying anything other than a "covered claim," and the statute further requires that all other sources of insurance be exhausted before looking to MIGA for coverage. **Byars**, 614 So. 2d at 963.

¶9.     The central question in this case, just as in **Byars**, is whether Owens Corning's claim is a covered claim under Miss. Code Ann. § 83-23-109 (f), which says in its entirety:

> (f) "Covered claim" means an unpaid claim, including one of unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this article applies issued by an insurer, if such insurer becomes an insolvent insurer and (1) the claimant or insured is a resident of this state at the time of the insured event, provided that for entities other than an individual, the residence of a claimant or insured is the state in which its principal place of business is located at the time of the insured event; or (2) the property from which the claim arises is permanently located in this state. "Covered claim" shall not include any amount awarded as punitive or exemplary damages; or sought as a return of premium under any retrospective rating plan; or due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise and shall preclude recovery thereof from the insured of any insolvent carrier to the extent of the policy limits.

The facts in **Byars** are instructive to its holding and a brief recitation is necessary here. Russell Byars, a Mississippi resident, received near fatal injuries as a result of a motorcycle accident where the helmet he was wearing shattered on impact. **Byars**, 614 So. 2d at 960-61. As a result of injuries to the frontal lobe of his brain, Byars was diagnosed as 100% disabled and dismissed from the Navy. **Id**. at 961. A guardianship was opened for Byars and suit was filed against the manufacturer and retailer of the helmet. **Id**. The retailer was a Michigan-

based hardware store which maintained an insurance policy with a then-insolvent carrier. *Id*. After unsuccessfully pursuing his claim against the insurance guaranty associations of Michigan and Virginia, Byars sought recovery from MIGA. *Id*.

¶10.    Byars settled with the retailer in an agreement where the retailer agreed to pay a sum of money and assigned its right against MIGA in return for a promise from Byars not to pursue further action against it. *Id*. MIGA denied Byars' claim and legal action ensued. *Id*. In deciding that case this Court held that:

> [T]he above statute [present day § 83-23-109 (f)] requires that the insured . . . *OR* the claimant . . . be a resident of Mississippi in order to fall under MIGA's umbrella.  Both parties stipulated as to Byars's Mississippi residency. Therefore, a literal reading of § 83-23-109 (c) [present day section 83-23-109 (f)] clearly affords the claimant Byars coverage.

*Id*. at 964 (emphasis in original).  Owens Corning argues that the above-quoted language gives it the right to use the underlying tort claimants' residency to force MIGA to take action. Although this Court has never addressed this particular issue, two foreign jurisdictions have done so, and found it gives no such right.

¶11.    The Supreme Court of Massachusetts in *Clark Equip. Co. v. Mass. Insurers Insolvency Fund*, 423 Mass. 165, 666 N.E.2d 1304 (Mass. 1996) and the Third Circuit Court of Appeals in *T&N v. Penn. Ins. Guar. Ass'n*, 44 F.3d 174 (3d Cir. 1994) have dealt with strikingly similar situations.  While admittedly the residency requirements of the three insurance guaranty acts contain marginally different language, they are all still based on the Post-Assessment Insurance Guaranty Association Model Bill, and thus they have similar

6

origins. ***Clark Equip.***, 666 N.E.2d at 1308. Therefore, these courts' interpretations are instructive in interpreting our statute.

¶12.    In both cases, the party asserting a claim against the guaranty association admitted its lack of residency but attempted to gain recognition by using the residency of the underlying tort claimants. ***Id.*** at 1306; ***T&N***, 44 F.3d at 176. Both courts found the operative term under their statute was "claim." ***Clark Equip.***, 666 N.E.2d at 1307; ***T&N***, 44 F.3d at 180. Their insurance guaranty associations, just like MIGA, are only authorized to pay "covered claims;" therefore, the relevant party is the one actually bringing the claim. To adopt Owens Corning's analysis, which emphasizes the "or" in our decision in ***Byars***, would make the terms "insured" and "claimant" mutually exclusive, which these other courts refused to do. *See **Clark Equip.***, 666 N.E.2d at 1306.

¶13.    The underlying tort claimants are not currently asserting claims. Therefore, they are not "claimants" within the meaning of § 83-23-109 (f). Owens Corning is asserting a claim and therefore is the statutory "claimant" and "insured" but is not a resident. Thus, the residency requirement is not satisfied and Owens Corning's claim is not a "covered claim." This is implicit in our holding in ***Byars***, where the out-of-state retailer was not asserting a claim against MIGA, but rather had assigned its right to assert a claim to Byars, who was a Mississippi resident. Therefore, in that case, Byars was both the insured and the claimant and the retailer was not a party to the action. For the purposes of determining if the claim was a "covered claim," Byars' residency became the only one considered because he was the

7

only one raising a claim. Since Byars was a Mississippi resident, he satisfied the residency requirement.

¶14. Owens Corning's argument is not consistent with the stated purpose of the Insurance Guaranty Act. The purpose of the act is to protect Mississippi residents.

## CONCLUSION

¶15. The trial court correctly granted MIGA's motion for summary judgment, and therefore we affirm.

¶16. **AFFIRMED.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., CONCURS IN RESULT ONLY. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**