ISHEE, J.,
for the Court.
¶ 1. The Circuit Court of Desoto County granted a motion for summary judgment filed by Mississippi Insurance Guaranty Association (MIGA), finding that the statutory exhaustion provision precluded the claim of William J. Leitch, Jr. Aggrieved by the circuit court’s grant of summary judgment, Leitch appeals. He argues that summary judgment was improper because *406 he presented factual issues that should have been resolved by a jury. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶2. On January 19, 1998, Leitch was traveling through Desoto County on Highway 78 when he rear ended an eighteen-wheeler owned by H-G & F Co., Inc. (H-G & F), and driven by its employee, Jack Dillard. Leitch claimed that the eighteen-wheeler driven by Dillard was pulled over on the side of the road when suddenly and without warning, it pulled out in front of Leitch. Leitch alleged that Dillard’s act of suddenly pulling out in front of him caused the accident and his resulting injuries. At the time, H-G & F had liability insurance on the eighteen-wheeler through Reliance Insurance Co., which later became insolvent.
¶ 3. The following year, Leitch filed a complaint against Dillard and H-G & F, seeking to recover for his injuries. Leitch later filed an amended complaint to add his auto insurance carrier, State Farm Mutual Automobile Insurance Co. (State Farm) as a defendant. In the complaint, Leitch sought to recover $300,000 from State Farm, which was the policy limit of his uninsured motorist coverage, and more than $3,000,000 from the remaining defendants. State Farm opted to settle with Leitch, agreeing to pay him the policy limit of $300,000 in uninsured motorist coverage.
¶ 4. Following the settlement with State Farm, Leitch filed suit in the circuit court, seeking a declaratory judgment against MIGA. Leitch sought the circuit court to declare that because of Reliance’s insolvency, MIGA was obligated to pay the full amount of its $300,000 statutory liability limit. In response, MIGA made a motion for summary judgment arguing that under Mississippi Code Annotated section 83-23-123 (Rev.1999), it was entitled to credit Leitch’s settlement with State Farm against its liability. Accordingly, MIGA concluded that Leitch had exhausted his remedy and that MIGA was absolved of any liability.
¶ 5. The circuit court granted MIGA’s motion for summary judgment. The circuit court found that Leitch’s claim for uninsured motorist coverage was a “covered claim”; therefore, MIGA was entitled to an offset of any amount recovered from that claim. The circuit court entered final judgment in favor of MIGA on July 17, 2007. From that judgment, Leitch timely filed the present appeal.
STANDARD OF REVIEW
¶ 6. This Court’s standard of review regarding a circuit court’s grant of a motion for summary judgment is as follows:
The Court employs a de novo standard of review in reviewing a lower court’s grant of summary judgment motion. Roussel v. Hutton, 638 So.2d 1305, 1314 (Miss.1994). Summary judgment is appropriate if the evidence before the Court — admissions in the pleadings, answers to interrogatories, depositions, affidavits, etc. — shows there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Newell v. Hinton, 556 So.2d 1037, 1041 (Miss.1990). This Court does not try issues on a Rule 56 motion, but only determines whether there are issues to be tried. [Miss.] Ins. Guar. [Ass’n] v. Byars, 614 So.2d 959, 963 (Miss.1993). In reaching this determination, the Court examines affidavits and other evidence to determine whether a triable issue exists, rather than the purpose of resolving that issue. Comment, Miss. R. Civ. P. 56.
*407 Miss. Gaming Comm’n v. Treasured, Arts, 699 So.2d 936, 938(¶ 11) (Miss.1997).
DISCUSSION
¶ 7. Leitch only alleges one point of error on appeal — that the circuit erred in granting summary judgment in favor of MIGA. He argues that he presented issues of fact to the circuit court that should have been resolved by a jury and that summary judgment was not proper.
¶ 8. Leitch’s argument rests on the recent decision of Mississippi Insurance Guaranty Association v. Cole ex rel. Dillon, 954 So.2d 407, 414(¶ 26) (Miss.2007), in which the supreme court found that: (1) section 83-23-123(1) did not require a claimant to first exhaust his claims against the solvent insurance providers of joint tortfeasors, and (2) section 83-23-123(1) also did not permit MIGA to offset any potential claims against it as a result of payments made by such a solvent insurance company of a joint tortfeasor. Leitch argues that according to the ruling in Cole, MIGA should not be allowed to offset any amount owed to Leitch from the uninsured motorist settlement with State Farm. MIGA responds that Cole merely stands for the proposition that MIGA may not offset its liability with a payment by a solvent insurance company of a joint tort-feasor, and it has no bearing on whether MIGA may offset its liability with a payment made by an uninsured motorist provider. According to MIGA, Cole is inapplicable and distinguishable from the present issue relating to uninsured motorist coverage, which MIGA argues is a “covered claim.”
¶ 9. The purpose of MIGA is to protect the insured from an insolvent insurance company through involuntary contributions from financially healthy insurance companies. Bobby Kitchens, Inc. v. Miss. Ins. Guar. Ass’n, 560 So.2d 129, 135 (Miss.1989); see also Miss.Code Ann. § 83-23-103 (Rev.1999). “The guaranty law statutes are to be liberally construed in order to achieve the purpose of protecting the public or claimants against financial loss because of the insolvency of insurers.” Byars, 614 So.2d at 963; see also Miss.Code Ann. § 83-23-107 (Rev.1999).
¶ 10. First, we must determine whether Leitch’s uninsured motorist claim against State Farm was a “covered claim” as defined by Mississippi Code Annotated section 83-23-109® (Rev.1999). “‘Covered claim’ means an unpaid claim, including one of unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this article applies issued by an insurer, if such insurer becomes an insolvent insurer....” Miss. Code Ann. § 83-23-109®.
¶ 11. If we find that Leitch’s claim against State Farm was a “covered claim,” then we must look to the section 83-23-123(1), which requires Leitch to exhaust any “covered claims” while also allowing MIGA to offset its liability by a payment made pursuant to any such claims. Section 83-23-123(1) provides as follows:
Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer, which is also a covered claim, shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this article shall be reduced by the amount of any recovery under such insurance policy.
¶ 12. The parties agree that Cole is the relevant case to apply to the present issue. According to Leitch, Cole requires us to find that his claim against State Farm was not a covered claim because State Farm remained solvent. Leitch would further interpret Cole to find that because the *408 claim was not a “covered claim,” MIGA should not be allowed to offset its liability by the amount of the State Farm settlement. Of course, MIGA argues that the decision in Cole is distinguishable from the present case because Leitch’s claim against MIGA and his claim against State Farm were essentially the same claim, unlike the joint tortfeasor situation in Cole. The circuit court found MIGA’s argument to be convincing, which is evidenced by the following passage from its order granting the motion for summary judgment:
The Court finds that Leitch’s claim for uninsured motorist benefits against State Farm is a “covered claim” as defined by 83 — 28—109(f) as his claim arose out of the insolvency of Jack Dillard and H-G & F Co., Inc.’s insurance carrier pursuant to Miss.Code Ann. But for the insolvency, the defendant would not have been uninsured and Leitch would not have qualified for uninsured motorist benefits.
¶ 13. The specific issue of whether MIGA may offset its liability with a payment made pursuant to an uninsured motorist provision has not been addressed in Mississippi. As such, MIGA cites ample out-of-state authority in support of its position that it should be allowed to offset its liability by Leitch’s $300,000 uninsured motorist settlement. In addressing this very issue, the District of Columbia Court of Appeals stated the following:
Our interpretation [of what is a “covered claim”] is also consistent with the contrary result, applying statutory provisions equivalent to D.C.Code § 35-1910(a) in cases involving claims made under an individual’s uninsured motorist policy. This situation typically arises in the following circumstances: driver A, who has uninsured motorists insurance, is involved in an accident with driver B, the tortfeasor. When driver B’s insurance is declared insolvent, driver A recovers from his or her own uninsured motorists policy. Driver A then attempts to recover from the state insurance guaranty association which has stepped into the shoes of the tortfeasor’s insolvent insurer. Because the claim against driver A’s uninsured motorists policy is the same claim as the one brought against driver B’s insolvent insurer, the insurance association can deduct the amount recovered from the injured party’s uninsured motorists policy from the amount it is statutorily obligated to pay to the injured party. See Stecher v. Iowa Ins. Guar. Ass’n, 465 N.W.2d 887[, 890] (Iowa 1991) (holding that Iowa Insurance Guaranty Association was entitled to offset its liability on behalf of a driver’s insolvent insurer by the amount received from the claimant’s uninsured motorist benefits); Hawkins v. Kentucky Ins. Guar. Ass’n, 838 S.W.2d 410[, 412] (Ky. Ct. App.1992) (same); McMahon v. Caravan Refrigerated Cargo, Inc., ... 406 Pa.Super. 303, 594 A.2d 349, 352 (1991) (holding that the Pennsylvania Insurance Guaranty Association was entitled to deduct any amount of uninsured motorist benefits received by claimant from his own insurer); Blackwell v.[Pa.] Ins. Guar. Ass’n, ... 567 A.2d 1103[, 1106-07] (Pa.Super.1989) (same). These cases stand for the proposition that where an injured plaintiff has alternative sources of insurance covering the same claim as the claim against the insolvent insurer, the courts interpret the nonduplication provision as requiring the plaintiff to exhaust the solvent policy and deduct the amount recovered from the obligation due by the state insurance guaranty association. See Insurance [Comm’r] v. [Prop.] & Cas. Ins. Guar. Corp., ... 546 A.2d 458, [464] (Md.1988) (recovery from a solvent insurer of a claim different *409 than the one against the insolvent insurer is not a “windfall” prohibited by the nonduplication provision).
Zhou v. Jennifer Mall Rest., Inc., 699 A.2d 348, 354-55 (D.C.1997). While an opinion from a foreign jurisdiction is clearly not binding on this Court, the District of Columbia Court of Appeals succinctly explains what is essentially MIGA’s argument concerning this issue.
¶ 14. We find MIGA’s argument convincing, and we find that the scenario in Cole is distinguishable from the present case. We first note that in Cole, the supreme court found that section 83-23-109(f) was unambiguous, and it stated that a ‘“covered claim’ arises from an insurance policy issued from a later insolvent insurance carrier.” Cole, 954 So.2d at 413(¶ 24). Our analysis of the present issue is, therefore, limited by the unambiguous definition of a “covered claim.”
¶ 15. Even though the supreme court in Cole ultimately found that MIGA had no right to offset its liability by an amount recovered from a joint tortfeasor, we see no conflict between that ruling and circuit court’s finding in this case — that Leitch fully exhausted his claim against MIGA when he settled with State Farm for $300,000 in uninsured motorist coverage. In Cole, the joint tortfeasor’s insurance carrier remained solvent at all times; therefore, the supreme court found that it was not a “covered claim.” Id. In the present case, State Farm also remained solvent. However, the present situation is distinguishable because while State Farm remained solvent at all times, H-G & F’s insurance carrier, Reliance, became insolvent, thereby triggering State Farm’s uninsured motorist coverage.
¶ 16. The present situation fits the supreme court’s description of a “covered claim” as “aris[ing] from an insurance policy issued from a later insolvent insurance carrier.” Cole, 954 So.2d at 413(¶24). Unlike Cole, Leitch’s claim was not a separate claim against a separate tortfeasor, but it was a claim against an insurance company that became liable only after HG & F’s insurance carrier became insolvent. Therefore, Leitch’s claim arose from an insurance policy issued by a later insolvent insurance carrier, which is how the supreme court defined a covered claim in Cole. Just as with the hypothetical from Zhou, State Farm stepped into the shoes of H-G & F’s insolvent insurance carrier. Ultimately, Leitch’s uninsured motorist claim against State Farm arose from H-G & F’s insurance policy issued by Reliance, which later became insolvent.
¶ 17. Based on the above reasoning, we find that the Leitch’s claim for uninsured motorist coverage against State Farm was a covered claim. Accordingly, we find no error with the circuit court’s ruling as such.
¶ 18. Being that Leitch’s claim for uninsured motorist coverage was a “covered claim” as provided by section 83 — 23—109(f), MIGA was entitled to offset any amount Leitch recovered under that claim against its liability resulting from Reliance’s insolvency. Not only was MIGA entitled to reduce its liability pursuant to section 83-23-123(1), but the statute further required Leitch to exhaust any claim such as his claim against State Farm.
¶ 19. Leitch’s claim against State Farm was a “covered claim”; therefore, MIGA was entitled to offset its liability -with any amount paid by State Farm. State Farm settled its claim with Leitch for the policy limit of $300,000, which is also the maximum amount for which MIGA may be held liable. Therefore, pursuant to section 83-23-123(1), MIGA was entitled to offset the entire amount of its $300,000 liability with the $300,000 State Farm settlement.
*410 ¶ 20. We find that the circuit court did not err in finding Leitch’s claim against State Farm to be a covered claim and, thereby, allowing MIGA to offset its liability by the amount recovered from State Farm. Seeing as Leitch settled for $300,000, and the most that he could recover from MIGA would have been $300,000, the circuit court properly allowed MIGA to offset its entire liability with the State Farm settlement. We find no error with the judgment of the circuit court, and we affirm the entry of summary judgment in favor of MIGA.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ., CONCUR.