KITCHENS, Justice,
Dissenting:
¶ 21. Though at first blush the majority’s opinion seems logical, and is exceedingly well-written, in my view its reasoning is fundamentally flawed.
¶ 22. Leitch filed two civil actions in the Circuit Court of DeSoto County, both of which arose from the vehicular crash in which he avers that he was seriously injured. The first is a typical personal injury action against a truck driver and his employer. Leitch claimed in that action that these parties negligently caused the accident and that they were liable to him for his resulting damages. Upon determining that the liability insurance carrier for these parties, Reliance Insurance Company, was insolvent, Leitch joined his own automobile liability insurance carrier, State Farm Mutual Automobile Insurance Company, as a named defendant, invoking the uninsured motorist coverage, in the amount of $300,000, that was part and parcel of his State Farm policy. The second civil action, which is the one now before this Court, is a declaratory judgment suit against Mississippi Insurance Guaranty Association in which Leitch sought a circuit court ruling that the payment he had received from his uninsured motorist carrier did not offset funds that were potentially available to him from the guaranty association (MIGA).
¶ 23. The circuit court decided that an offset applies, and that the full amount that would have been available from MIGA is offset by the payment Leitch received from State Farm. Coincidentally, the maxi *402 mum statutory coverage from MIGA is $300,000, the same amount as Leitch’s uninsured motorist coverage through State Farm. Miss.Code Ann. § 83-23-115(l)(a)(iii) (Rev.1999). The Court of Appeals agreed with the circuit court, as do my esteemed colleagues in the majority. With respect, I do not.
¶ 24. A correct determination of this issue requires, in my judgment, a different interpretation of Mississippi Code Section 83-23-123(1) than that made by the majority. A comprehensive analysis, with benefit of all relevant facts in this case, is not possible because of insufficient information in the record before us. Of greatest importance in this regard is the fact that there has been neither a judicial determination nor a stipulation by the parties of the total amount of compensatory damages, if any, due Leitch from the alleged tortfeasors. Of course, such a determination can, and may eventually, be made by a DeSoto County jury in the first civil action filed by Leitch. This Court is hampered in its analysis by our not knowing the total amount of compensation for damages, if any, to which Leitch is entitled.
¶ 25. State Farm, standing in the shoes of Reliance as a liability insurance carrier for the alleged tortfeasors, bought its peace by settling with Leitch for its policy limits of $300,000. This Court is further hindered in its analysis by not knowing how much liability insurance the alleged tortfeasors would have had through Reliance, had Reliance been solvent at times relevant to Leitch’s accident.
¶ 26. If Reliance’s applicable policy limits exceeded $300,000, then the uninsured motorist coverage available to Leitch through State Farm filled Reliance’s empty shoes, but only partially. If the compensation due to Leitch from the tortfea-sors exceeds $300,000, then it falls upon MIGA to complete the filling of Reliance’s shoes in an amount sufficient to pay Leitch’s remaining, unpaid damages, but not to exceed MIGA’s statutory cap of $300,000.
¶ 27. In applying Section 83-23-123(1) to the available facts, it is necessary to understand that Leitch never had a claim, and does not now have a claim, against the insurance company in whose shoes State Farm and MIGA stand, namely, Reliance. Under the circumstance in which Leitch found himself after his accident, the only insurance company that he had a right to sue was State Farm, and his right to sue that company would not have come to fruition if Reliance had been solvent, or if a solvent Reliance’s applicable coverage had proven insufficient to compensate Leitch for all damages for which the alleged tort-feasors were found to be liable.
¶ 28. The majority correctly finds that, “the Mississippi Insurance Guaranty Association Law was enacted to protect policy holders of certain kinds of insurance in the event of their insurer’s insolvency.” Miss. Ins. Guar. Ass’n v. Byars, 614 So.2d 959, 963 (Miss.1993) (Emphasis added.) The benefits that Leitch may receive through the guaranty association will come to him indirectly, inasmuch as the guaranty association exists for the protection of the person and company who Leitch claims are responsible for his injuries. Although they would have relied on Reliance if it had been solvent, they must now rely, at least in part, on the guaranty association.
¶ 29. Since we do not know the amount of Leitch’s damages attributable to the alleged tortfeasors, it may be helpful to assume, for the purposes of analysis, an amount that exceeds all of the coverage afforded by State Farm and MIGA in order to understand Code Section 83-23-123(1) correctly. Thus, assume that Leitch’s total damages due from the alleged tortfeasors amount to $1,000,000.
*403 ¶ 30. State Farm, through its uninsured motorist coverage in Leitch’s policy, has paid $300,000 of the $1,000,000 on behalf of the alleged tortfeasors. Therefore, in this scenario, $700,000 remains due and payable to Leitch from the parties responsible for the accident and resulting injuries; $700,000 is the “amount payable” mentioned in the second sentence of Section 83-23-123(1).
¶ 31. Leitch has followed the dictates of the statute by first exhausting his rights under his State Farm policy. Therefore, the guaranty association is entitled to have its obligation reduced by the $300,000 amount received by Leitch from State Farm. Accordingly, the remaining, unpaid amount due to Leitch from the alleged tortfeasors is $400,000. However, the guaranty association is limited to paying an amount no greater than the statutory cap of $300,000. Under this hypothetical scenario in which Leitch’s total adjudicated or stipulated damages are $1,000,000, the guaranty association must pay Leitch $300,000, leaving an unpaid amount of $100,000 still due and owing to Leitch from the alleged tortfeasors.
¶ 32. The word offset is nowhere to be found in the cited statute. In his declaratory judgment action, Leitch asks the courts of this state to tell him and the guaranty association whether an offset applies. While it is true that there is an applicable reduction, or credit, that applies to the totality of Leitch’s damages, that reduction does not “cancel out” MIGA’s obligation to take up where State Farm left off in paying whatever damages are ultimately attributed to the alleged tortfea-sors. In this case, the uninsured motorist coverage comes first under the statute, and is paid in addition to, not instead of, MIGA’s obligation, within its statutorily-defined limits.
¶ 33. Because I believe the foregoing to be the correct analysis, I respectfully dissent from the contrary conclusion of the majority, and I would reverse the trial court’s grant of summary judgment in favor of MIGA and the Court of Appeals’s affirmance thereof.
GRAVES, P.J., JOINS THIS OPINION IN PART.